**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MILKA AURISTELA ORTEGA CORTEZ, an
individual

               Plaintiff,

vs.

JOSEPH B. EDLOW, Director of U.S.
Citizenship and Immigration Services; KRISTI
NOEM, Secretary of U.S. Department of
Homeland Security, U.S. DEPARTMENT OF
HOMELAND SECURITY; PAMELA BONDI,
Attorney General of the United States; and
JASON A. REDING QUIÑONES, United States
Attorney for the Southern District of Florida
               Defendants.

Case No.:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION**
**FOR WRIT OF MANDAMUS**

Plaintiff, Milka Auristela Ortega Cortez ("Plaintiff"), through undersigned counsel, hereby

sues Defendants Joseph B. Edlow, Director, U.S. Citizenship and Immigration Services

("Edlow"); Kristi Noem, Secretary of U.S. Department of Homeland Security ("Noem"); Pamela

Bondi, Attorney General of the United States ("Bondi"); and Jason A. Reding Quiñones, United

States Attorney for the Southern District of Florida ("Reding") (collectively, "Defendants"), and

alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff, by and through undersigned counsel, respectfully bring this Complaint for

Declaratory and Injunctive Relief and Petition for Writ of Mandamus, asking the Court to enjoin

Defendant Joseph B. Edlow, Director of United States Citizenship & Immigration Services

("USCIS") and those acting under him, to cease the application of these two barriers to the adjudication of their pending Forms : (i) I-485, *Application to Register Permanent Resident Status or Adjust Status* ("Form I-485"); I-765, *Application for Employment Authorization* ("Form I-765"); and I-131, *Application for Travel Document (Advance Parole)* ("Form I-131") (collectively, the "Immigration Benefits Applications"):

(1) the section of the December 2, 2025 Policy Memorandum, the subject of which is "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries." PM-602-0192 ("**Policy Memorandum I**"), that places "a hold on pending benefit requests for aliens from countries listed in Presidential Proclamation (PP) 10949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats* ["PP 10949"],[1] pending a comprehensive review, regardless of entry date." *See* **Exhibit A**, *December 2, 2025 USCIS Policy Memorandum*, at 1,¶2; and

(2) the section of the January 1, 2026 Policy Memorandum, the subject of which is "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries." PM-602-0194. ("**Policy Memorandum II**") that places "a hold on all pending benefit applications, for aliens listed in Presidential Proclamation (PP) 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States* ["PP 10998"],[2] pending a comprehensive review, regardless of entry date." *See* **Exhibit B**, *January 1, 2026 USCIS Policy Memorandum*, at 1,¶1.[3]

2.      Further, Plaintiffs ask the Court to compel Defendants, and those acting on their behalf, to adjudicate Plaintiffs' Immigration Benefits Applications.

## NATURE OF ACTION

3.      This is an action to ask the Court to compel Defendants to cease the application of sections of the Policy Memorandums that place holds on pending immigration benefit requests

---

[1] Also accessible at: https://www.whitehouse.gov/presidential-actions/2025/06/restricting-the-entry-of-foreign-nationals-to-protect-the-united-states-from-foreign-terrorists-and-other-national-security-and-public-safety-threats/ (last accessed on January 18, 2026).

[2] Also accessible at: https://www.whitehouse.gov/presidential-actions/2025/12/restricting-and-limiting-the-entry-of-foreign-nationals-to-protect-the-security-of-the-united-states/ (last accessed on January 18, 2026).

[3] Policy Memorandum I and Policy Memorandum II are collectively referred to as "Policy Memorandums."

based upon an applicant's nationality, and to take all appropriate action to adjudicate Plaintiffs' Immigration Benefits Applications within 30 days.

4.      Plaintiff is a citizen of the Bolivarian Republic of Venezuela.  Plaintiff has asylee status because her I-589, *Application for Asylum and for Withholding of Removal* was approved by an Immigration Judge on April 6, 2021 at the Orlando Immigration Court.

5.      In April 2022, after having asylee status for 1 year, Plaintiff filed Form I-485, *Application to Register Permanent Resident Status or Adjust Status* (USCIS Receipt # **MSC2290494152**) ("Form I-485").  On January 9, 2024, Plaintiff filed Form I-131, *Application for Travel Document* (USCIS Receipt # **IOE0923857194**) ("Form I-131").  On February 18, 2025, Plaintiff filed Form I-765, Application for Employment Authorization (USCIS Receipt # **IOE0930239338**) ("Form I-765").  Plaintiff herein refers to Form I-485, Form I-131, and Form I-765 collectively throughout this Complaint as the "Immigration Benefit Applications."

6.      To date, Plaintiff has not received decisions on her Immigration Benefit Applications, and now Defendants, through the Policy Memorandums, have placed a hold on the adjudication of her Immigration Benefit Applications.

7.      Plaintiff is entitled to decisions on her pending Immigration Benefit Applications. The improper withholding of statutorily mandated adjudications of the pending applications presents ongoing violations of the Administrative Procedures Act ("APA"), 5 U.S.C. § 555 et seq. and § 701 et seq.; the Immigration and Nationality Act ("INA") and its implementing regulations 8 C.F.R. §§ 274a.12 and 274a.13, and the U.S. Constitution, Equal Protection Clause.

8.      Plaintiff's rights are infringed by this withholding of adjudications and have been detrimentally harmed; the withholding has affected her life and employment opportunities, and her ability to plan for their future.

3

9.      The Immigration Benefits Applications remain within the jurisdiction of Defendants, who have improperly withheld action, to the extreme detriment of the rights and privileges of the Plaintiff.

10.     Plaintiff now turns to this Court seeking an order to enjoin Defendants and those acting under them from applying the national origin restrictions of the Policy Memorandums as applied to her, and also, to compel Defendants to take all appropriate action to fulfill their mandatory, non-discretionary duty to adjudicate Plaintiff's Immigration Benefits Applications.

**JURISDICTION**

11.     This is a civil action brought pursuant to the INA, 8 U.S.C. § 1329 (jurisdiction of the district courts) and 28 U.S.C. § 1331 (federal question jurisdiction) and § 1361 (action to compel an officer of the United States to perform his duty) to redress the deprivation of rights, privileges, and immunities secured to Plaintiff, by which statutes jurisdiction is conferred, to compel Defendants to perform a duty that Defendants owed to Plaintiff.

12.     Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Furthermore, Plaintiff is challenging Defendants' authority to refuse to adjudicate Plaintiff's Immigration Benefits Applications and not challenging a decision within the discretion of Defendants. Therefore, jurisdiction exists for this Court to consider whether Defendants have the authority to withhold adjudications of the Immigration Benefits Applications.

13.     Jurisdiction is also conferred pursuant to 5 U.S.C. §§ 555(b), and § 701, 702 et seq, the APA. The APA requires USCIS to carry out its duties within a reasonable time. 5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their

representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." USCIS is subject to 5 U.S.C. § 555(b). *See Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n. 4 (1986). *See also Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) (finding that district court has jurisdiction under the APA, in conjunction with 28 U.S.C. § 1331, to review plaintiff's complaint for declaratory and injunctive relief against federal agency); *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 114 (D.D.C. 2005) ("The Administrative Procedure Act requires an agency to act, within a reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to, compel agency action … unreasonably delayed," 5 U.S.C. § 706(1).")

14. Courts have consistently held that USCIS has a nondiscretionary duty to process applications within a reasonable timeframe, even when the ultimate decision to grant or deny the application is discretionary. *See, e.g., Fei Wang v. Chertoff*, 676 F. Supp. 2d 1086 (D. Idaho 2009); *Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253 (W.D. Wash. 2008); *Shahid Khan v. Scharfen*, 2009 U.S. Dist. LEXIS 28948 (N.D. Cal. Apr. 6, 2009); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540 (S.D.N.Y. 2008); *Jones v. Gonzales*, Slip Copy, 2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.")

15. Both the regulations and the INA provide numerous examples of duties owed by USCIS regarding the adjudication of immigrant-related applications. 8 U.S.C. § 1103 provides that "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this Act and all other laws relating to the immigration and naturalization of aliens[.]" (Emphasis added). The Code of Federal Regulations provides that, upon denial, "the officer shall explain in

5

writing the specific reasons for denial." 8 C.F.R. § 103.3. The language of the statute and regulations is mandatory, not discretionary, and the Defendant has a clear duty to adjudicate the application pending before them. *See Matter of Sealed Case*, 151 F.3d 1059, 1063 (D.C. Cir. 1998); *see also, First Federal Savings and Loan Association of Durham v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988). As set forth below, the withholding of Plaintiff's Immigration Benefits Applications is unlawful, and thus, the resulting delay in adjudicating the applications is unreasonable.

16.     There exists an actual and justiciable controversy between Plaintiff and Defendants requiring resolution by this Court. Plaintiff has no other adequate remedy at law.

17.     The Court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*

## VENUE

18.     Pursuant to 28 U.S.C. § 1391(e), venue is proper in this district on the following grounds: (1) this is a civil action in which Defendants are officers of the United States or agencies thereof acting in their official capacities; (2) Plaintiff resides in the City of Miami Beach, in Miami-Dade County, within this judicial district and no real property is involved; and (3) a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

19.     Plaintiff Milka Auristela Ortega Cortez is a Venezuelan citizen residing in Miami Beach, Florida. Plaintiff is the Applicant on Form I-485 (USCIS Receipt # **MSC2290494152**), Form I-765 (USCIS Receipt # **IOE0930239338**), and Form I-131 (USCIS Receipt # **IOE0923857194**).

20.     Defendant Joseph B. Edlow is the Director of USCIS.  This suit is brought against Director Edlow in his official capacity, as USCIS is the component of the DHS responsible for the administration of laws and statutes governing immigration and naturalization and the adjudication of petitions for immigration benefits, including petitions for noncitizens.  6 U.S.C. § 271.  As such, he is charged with the administration and enforcement of all USCIS functions, powers, and duties nationwide.

21.     On December 5, 2025, a few days after the Policy Memorandum I was issued, USCIS posted a video of Defendant Edlow on Instagram where he said, "we took decisive action…we also have announced that we are pausing any adjudications of immigrant benefits and nonimmigrant benefits for any individual from the 19 countries of concern that the president listed in his proclamation, his 212(f) proclamation banning entry back in June. So we are taking decisive action…" *See* https://www.instagram.com/p/DR4n7jVDIaS/.



22.     Defendant Kristi Noem is the Secretary of Homeland Security.  This suit is brought against Secretary Noem in her official capacity, as she is charged with overseeing the actions of DHS, including determinations of the Immigration Benefits Applications.

23.     Defendant Pamela Bondi is the U.S. Attorney General.  This suit is brought against Attorney General Bondi in her official capacity and only as a nominal defendant.

24.     Defendant Jason A. Reding Quiñones is the United States Attorney for the Southern District of Florida.  This suit is brought against U.S. Attorney Reding in his official capacity and only as a nominal defendant.

## LEGAL FRAMEWORK

25.     Federal immigration laws allow certain foreign nationals to obtain lawful permanent residency in the U.S. through a family-based petition, on the basis of employment, through the Diversity Visa program, or following a grant of asylum. After family-based immigration, employment is the next most common route by which a foreign national may obtain a green card.  *See* 8 USC 1255; INA § 203(b)(2); 8 U.S.C. § 1153(b)(2).

26.     After completing the I-485, filing supporting documents, and paying the applicable fees, the applicant will receive a biometrics appointment date. USCIS requires all applicants and their derivative beneficiaries to be fingerprinted for the purpose of conducting a security clearance and a criminal background check.

27.     Once an applicant has been fingerprinted, USCIS may schedule an interview to further evaluate the applicant's eligibility for adjustment of status. USCIS may also decide to waive the interview.  Here, Plaintiff attended an interview at the USCIS Miami District Office on November 26, 2024.

28. Following the interview, USCIS will then make a decision on the I-485 application in the form of approval, issue a Request for Evidence ("RFE"), or a denial.

29. If USCIS requires additional information or documentation to support the I-485 application, they will request it in the form of an RFE.

30. In some cases, USCIS may issue a Notice of Intent to Deny ("NOID") if the adjudicator believes the application likely does not warrant approval even with additional evidence.

31. If the I-485 application is approved, the applicant will receive a Notice of Approval informing them that the adjustment of status is approved.

32. If the application is denied, the applicant must be notified of the reasons for the denial and of the right to appeal.

33. USCIS requires a definitive Interagency Border Inspection System (IBIS) Name Check, FBI Fingerprint check, and FBI Name Check to be obtained and resolved before an application for Adjustment of Status Application can be approved.

34. Federal immigration law requires foreign nationals to receive lawful permission to work in the United States, and for employers to ensure that foreign nationals have received that permission. *See* 8 U.S.C. § 1324a. Failure to comply with employment laws is a deportable offense. U.S. Citizenship & Immigration Servs., USCIS Policy Manual, Vol. 10: Employment Authorization, Part A, Chapter 1 (Purpose and Background), n.1 (citing 8 U.S.C. § 1227).

35. While some immigration statuses automatically receive permission and work authorization, certain statuses require that foreign nationals "must affirmatively apply for employment authorization with USCIS" by filing an I-765. U.S. Citizenship & Immigration Servs., USCIS Policy Manual, Vol. 10: Employment Authorization, Part A, Chapter 1 (Purpose and

Background). Regulations outline which immigrant categories require authorization to work and which are automatically eligible.  *See* 8 C.F.R. § 274a.12.

36.     Immigrant categories that are required to receive work authorization documents include nonimmigrant F-1 students who: seek to complete optional practical training, have been offered employment under the sponsorship of an international organization, or seek employment because of severe economic hardship, as well as applicants who have filed adjustment of status for permanent residency. 8 C.F.R. § 274a.12(c).

37.     "The approval of applications filed under 8 C.F.R. 274a.12(c) [aliens who must apply for employment authorization], except for 8 C.F.R. 274a.12(c)(8) [cases regarding asylum or withholding of deportation or removal], are within the discretion of USCIS." 8 U.S.C. § 274a.13(a)(1).

38.     USCIS offers optional "Premium Processing" for an additional fee of $1,685. This premium processing "guarantee[s] that [USCIS] will take adjudicative action on the case, as described below, within the time periods described below, or we will refund the premium processing fee: […] 30 business days for Form I-765." U.S. Citizenship & Immigration Servs., How Do I Request Premium Processing, USCIS (last accessed February 6, 2026), https://www.uscis.gov/forms/all-forms/how-do-i-request-premium-processing

39.     USCIS still advertises premium processing to applicants whose applicants are withheld due to the Policy Memorandums.

40.     If USCIS requires additional information or documentation to support the I-765 application, they will request it in the form of an RFE.

41.     In some cases, USCIS may issue a NOID if the adjudicator believes the application likely does not warrant approval even with additional evidence.

42.     Upon I-765 approval, USCIS distributes an Employment Authorization Document ("EAD"), which is designated as Form I-766, to the eligible foreign nationals as proof of employment authorization.

43.     If the application is denied, the applicant must be notified in writing of the reasons for the denial. *See* 8 C.F.R. 103.3. There is no appeal for an I-765 denial; however, a denied applicant may submit a motion to reopen or reconsider, and the denial does not preclude refiling again if eligibility can be established.

44.     If a foreign national wishes to return to the United States lawfully after traveling outside the United States, the foreign national must generally have either (a) a valid entry document such as permanent resident card (also known as a green card) or nonimmigrant visa; or (b) a valid and unexpired travel document.  *See* https://www.uscis.gov/green-card/green-card-processes-and-procedures/travel-documents (last accessed on February 6, 2026).

45.     Foreign nationals with pending I-485s can file Form I-131 to seek Advance Parole, a specific type of travel document that allows foreign nationals in the United States seeking to return after temporary travel abroad.  *Id.*

46.     If USCIS requires additional information or documentation to support the I-131 application, they will request it in the form of an RFE.

47.     In some cases, USCIS may issue a NOID if the adjudicator believes the application likely does not warrant approval even with additional evidence.

48.     Upon I-131 approval, USCIS distributes Authorization for Parole of an Alien into the United States ("AP"), which is designated as Form I-512L, to the eligible foreign nationals as proof of advance parole.

49.     The last action on Plaintiff's Immigration Benefits Applications was taken as follows: (i) USCIS interviewed Plaintiff on November 26, 2024 in connection with the I-485; (ii) Plaintiff attended a biometrics appointment on or about October 1, 2025 in connection with the I-765; and (iii) USCIS acknowledged receipt of the I-131 on January 9, 2024.

## STATEMENT OF FACTS

50.     Plaintiff Fuenmayor filed the Immigration Benefits Applications on the dates set forth in this Complaint.

51.     On December 2, 2025, USCIS published Policy Memorandum I on its website. *See* **Exhibit A**, December 2, 2025, USCIS Policy Memorandum. Policy Memorandum I explicitly withholds USCIS adjudications for citizens from 19 countries identified in PP 10949.

52.     On January 1, 2026, USCIS published Policy Memorandum II on its website, which notes "[t]his memorandum does not supersede the guidance in Policy Memorandum, Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High Risk Countries on December 1, 2025 except as specified under the 'Exceptions to the Adjudication Hold' outlined in this memorandum," noting that the public-facing version of the Policy Memorandum was published December 2, 2025.  *See* **Exhibit B**, January 1, 2026, USCIS Policy Memorandum, at 1, ¶1. None of the exceptions listed appears to apply to Plaintiff. Policy Memorandum II expanded the number of travel ban countries to include the following 39 countries, plus the Palestinian Authority: Afghanistan, Angola, Antigua and Barbuda, Benin, Burkina Faso, Burma, Burundi, Chad, Republic of the Congo, Cote d'Ivoire, Cuba, Dominica, Equatorial Guinea, Eritrea, Haiti, Gabon, The Gambia, Iran, Laos, Libya, Malawi, Mali, Mauritania, Niger, Nigeria, Palestinian Authority, Sierra Leone, Senegal, Somalia, South Sudan, Sudan, Syria, Tanzania, Togo, Tonga, Turkmenistan, Venezuela, Yemen, Zambia, and Zimbabwe.

53.     According to an email from USCIS to the Office of Senator Schiff,  USCIS believes the hold is an "exercise of its authority to investigate immigration benefit requests filed by aliens who may pose risks to the national security and public safety of the United States, as outlined in DHS Delegation of Authority 0150.1, issued June 5, 2003." *See* **Exhibit C**, USCIS Email to Senator Schiff's Office. While that delegation gives the authority to investigate, and the authority to interrogate, it extends no authority to implement a hold on the Immigration Benefits Applications.

54.     Plaintiff has been significantly harmed by the hold of adjudications of her Immigration Benefits Applications. This indefinite hold has left her life and future in the U.S. suspended in a state of prolonged uncertainty. Without her EAD or Green Card, Plaintiff has had her career and life disrupted, and faces significant obstacles in planning for her future as well as seeking and securing gainful employment.  Without their Green Cards or Advance Parole document, Plaintiff is unable to engage in temporary travel outside of the United States.

55.     Defendants' delay has also affected Plaintiff ability to become eligible for U.S. citizenship, and the extensive rights and benefits that accompany it, including the right to vote and fully participate in the democratic process,  the ability to obtain a U.S. passport for unrestricted travel, eligibility for jobs restricted to U.S. citizens, the opportunity to run for public office, and the ability to sponsor immediate family members for immigration to the United States.

56.     Plaintiff remains constrained by limitations in her ability to travel, including the risk of logistical challenges, such as airlines refusing to recognize her status and additional checks at entry. As a result, she has been sacrificing opportunities to visit and maintain ties with some of her loved ones abroad, including her daughter, who resides in Madrid, Spain, and Plaintiff has not seen her for more than 8 years.

57.     These ongoing harms underscore the tangible and far-reaching consequences of Defendants' hold on the adjudication of her Immigration Benefits Applications.

58.     Finally, as Defendant's withholding of the Plaintiff's Immigration Benefits Applications adjudications is unlawful, the subsequent delays caused by the withholding are unreasonable.

59.     Unless and until Plaintiff's Immigration Benefits Applications are adjudicated, she will continue to suffer severe, concrete, and particularized injuries.

## LAW AND ARGUMENT

### A. Defendants' Mandatory Duty to Adjudicate Plaintiff's Immigration Benefits Applications.

60.     The INA and the regulations pursuant to the INA impose on the Defendants a mandatory, affirmative, and non-discretionary duty to adjudicate properly filed Forms I-485, I-765, and I-131.

61.     Courts have found that immigration authorities have a mandatory duty to adjudicate an application. *See, e.g., Iddir*, 301 F.3d at 500 (duty to adjudicate applications under the diversity lottery program); *Patel*, 134 F.3d at 933 (duty to adjudicate visa application); *Yu*, 36 F. Supp. 2d at 932 (duty to process SIJ application in a reasonable amount of time); *Kai Hoo Loo*, 2007 U.S. Dist. LEXIS 17822, at *13 ("Indeed, numerous courts have found that immigration authorities have a non-discretionary duty to adjudicate applications."); *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) (holding that the regulation stating that consular officials either "issue or refuse" a completed visa creates a duty to adjudicate).

62.     Moreover, courts have determined that the duty to render a decision on an application is mandatory even where the underlying decision to be made by the agency is a discretionary one; thus, mandamus actions are appropriate to compel the government to exercise

14

its discretion in a case where the government has failed to take any action. *See, e.g., Villa*, 607 F. Supp. 2d at 363 (duty to adjudicate adjustment application in a reasonable amount of time); *Dabone v. Thornburgh*, 734 F. Supp. 195, 200 (E.D. PA. 1990) (holding the Board of Immigration Appeals owed the plaintiff a duty to adjudicate his motion to reopen an exclusion proceeding).

63.     In the immigration context, an agency has a general duty to take some action, but does not have a duty to exercise its discretion in any certain manner. *Silveyra v. Moschorak*, 989 F.2d 1012, 1015 (9th Cir. 1993)("[m]andamus may not be used to instruct an official how to exercise discretion unless that official has ignored or violated 'statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised.'"); ***Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (the Attorney General has discretion to grant or deny an application, but does not have discretion to simply never adjudicate an adjustment application)**; *Soneji v. Dep't of Homeland Sec.*, 525 F. Supp. 2d 1151, 1155 (N.D. Cal. 2007) (with respect to an APA claim, finding USCIS' argument that it does not have to adjudicate an adjustment application "not only pushes the bounds of common sense but is also contradicted by a wealth of authority from this and other districts.") (citing cases).

64.     The INA, the Code of Federal Regulations, and longstanding USCIS policy unequivocally impose the duty to adjudicate applications and make clear that it is a mandatory duty on the Defendant.

**B. Defendants' Withholding of Adjudications is Unlawful and Unreasonable.**

65.     Under the APA, a reviewing court may order action unlawfully withheld or unreasonably delayed. "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court

15

shall compel agency action unlawfully withheld or unreasonably delayed;" and may also "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and agency action taken "without observance of procedure required by law."  *See* 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D).

66.     Congress has never granted the authority to the executive branch to put a hold on Forms I-485, I-765, or I-131 adjudications.  Rather, Congress has made clear what it considers a reasonable time for adjudicating immigration benefits. "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition."  *See* 8 U.S.C. § 1571 and (Pub. L. 106–313, title II, §202, Oct. 17, 2000, 114 Stat. 1262.)

67.     Defendants owe Plaintiff a duty to properly and in good faith complete processing of Plaintiff's applications and render facially legitimate and bona fide decisions, and Defendants are wholly disregarding that duty.

## C. Defendants' Withholding of Adjudications and Unreasonable Delay have Harmed Plaintiffs.

68.     As a result of Defendants' abrogation to perform their mandatory duty to adjudicate Plaintiff's Immigration Benefits Applications within a reasonable amount of time, Plaintiff has suffered and will continue to suffer substantial, concrete, and particularized injury.

69.     Defendants' hold will cause Plaintiff to be unable to obtain gainful employment, relocate for work, and risk of losing job offers due to the uncertainty. Plaintiff, lacking the protection of Lawful Permanent Status, is afraid to leave her home during heightened ICE activity in her community.  In addition, Plaintiff is unable to attend educational institutions and to travel

outside of the United States to visit their relatives.  Moreover, Plaintiff has great difficulty renewing her Florida driver's license, which is required to drive her vehicle.

### D. Plaintiff is Entitled to Relief.

70.     District courts have mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Moreover, a district court reviewing agency action under the APA may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

71.     Pursuant to the APA, 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D), a reviewing court may also "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and agency action taken "without observance of procedure required by law."

72.     The APA requires administrative agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555. The INA's implementing regulations provide that when a Form I-485 application has been properly completed and executed it must be either approved or denied. 8 C.F.R. § 245.2(a)(5). USCIS does not have the right to interminably suspend action on a Form I-485 application; it must decide and act consistent with that decision by either issuing or formally refusing the Form I-485  application.

73.     Defendants' failure to act violates the APA, 5 U.S.C. § 706(1), the INA and its implementing regulations, and agency policy. Because Defendants have failed to carry out their duties and obligations under the law and governing regulations, depriving Plaintiff of her clearly

17

established rights, Plaintiff is entitled to a writ of mandamus and/or relief under the APA directing Defendants to adjudicate her Immigration Benefits Applications forthwith.

## CAUSES OF ACTION

## COUNT ONE: 28 U.S.C. § 1361 – WRIT OF MANDAMUS

74.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75.     Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

76.     A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 113 (D.D.C. 2005); see also Patel, 134 F. 3d at 933 (duty to adjudicate an immigrant visa application).

77.     The Plaintiff clearly meets all three of these criteria. *See, e.g., Raduga USA*, 440 F. Supp. 2d at 1146 ("Plaintiffs' claim here is clear and certain, and the consul's nondiscretionary, ministerial duty is plainly prescribed. Furthermore, Plaintiff has no other means to compel the United States consul to make a decision.") *United States v. Kerry*, 168 F.Supp.3d 268, 291-92 (D.D.C. 2016)(holding the doctrine of consular non-reviewability did not apply where plaintiffs' visa applications were not formally refused, but were held in "administrative processing"); see also *Patel v. Reno*, 134 F.3d 929, 932-33 (9th Cir. 1997) (affirming the granting of mandamus relief where plaintiff's application had only been "provisionally refused"); *Maramjaya v. U.S. Citizenship & Immigration Servs.*, 2008 WL 9398947, at 4 (D.D.C. Mar. 26, 2008)(holding that

18

the doctrine of consular non-reviewability did not apply when the case had not procedurally progressed to the point where consular immunity would bar judicial review").

78.     Defendants have a clear non-discretionary duty to adjudicate Plaintiff's Immigration Benefits Applications.

79.     Defendants owe a duty to act upon Plaintiff's Immigration Benefits Applications.

80.     The INA, and the regulations pursuant to it, impose on Defendants a nondiscretionary duty to timely adjudicate Plaintiff's Immigration Benefits Applications and to complete any background checks, interviews, or other investigations required by USCIS in order to do so.

81.     Plaintiff asserts that Defendants have no legal basis for failing to proceed with the applications, and that they have no adequate remedy at law for Defendants' failure to timely adjudicate the applications and any background checks or other investigations required.

82.     Nonetheless, Defendants have willfully and unreasonably failed to adjudicate Plaintiff's Immigration Benefits Applications, thereby depriving Plaintiff of her rights to have properly filed applications decided in a timely manner.

83.     Defendants have failed in their duty to adjudicate Plaintiff's Immigration Benefits Applications by refusing to make decisions.

84.     Adjudication of Plaintiff's Immigration Benefits Applications is a purely ministerial, non-discretionary act which the Defendants are under an obligation to perform in a timely manner; the Plaintiff has no alternative means to obtain adjudication; and their right to issuance of the writ is "clear and indisputable." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980); *see also First Federal Savings and Loan Ass'n of Durham*, 860 F.2d at 138; *Patel*,

134 F.3d at 933 ("[W]e find that the consulate had a duty to act and that to date ... the consulate has failed to act in accordance with that duty and the writ [of mandamus] should issue.").

85.     A mandamus action is also appropriate because the Defendants failed to act within a reasonable time. *See, e.g., Liu v. Novak*, 509 F. Supp. 2d 1, 9 (D.D.C. 2007) (holding that the APA requires the government to act within a reasonable period of time); *see also Sierra Club v. Thomas*, 828 F.2d 783, 794 (D.C. Cir. 1987) (stating that "regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice").

86.     As noted above, it is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application. *See* 8 U.S.C. § 1571 and (Pub. L. 106–313, title II, §202, Oct. 17, 2000, 114 Stat. 1262.)

87.     Defendants have a clear, non-discretionary, and mandatory duty to adjudicate Plaintiff's Immigration Benefits Applications.  There is no legal bar to doing so.

88.     Accordingly, Plaintiff has a clear and indisputable right to have their applications adjudicated.

89.     No alternative remedy exists to compel action by Defendants.

### COUNT TWO: Administrative Procedure Act, 5 U.S.C. § 555(b) § 706(1) et seq.

90.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91.     Pursuant to the APA, 5 U.S.C. § 555(b), Defendants have a nondiscretionary duty to act "within a reasonable time" upon matters presented to them.

92.     Pursuant to the APA, 5 U.S.C. § 706(1), a court may compel agency action unlawfully withheld or unreasonably delayed.

93.     Pursuant to the APA, 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D), a reviewing court may also "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and agency action taken "without observance of procedure required by law"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. 706(C); or "without observance of procedure required by law," 5 U.S.C. § 706(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent thereof, or failure to act." 5 U.S.C. § 551(13).

94.     Plaintiff is eligible for and has fulfilled all statutory requirements for the Immigration Benefits Applications. Plaintiff has submitted all necessary information and evidence supporting the applications, attended biometric appointments and interviews, and paid all applicable fees.

95.     Defendants have failed to carry out the adjudicative and administrative functions delegated to them by law.

96.     Further, Defendants' delay in acting on Plaintiff's Immigration Benefits Applications is unreasonable and constitutes agency action wrongfully withheld or unreasonably delayed because the reason for the delay is unlawful withholding.  Plaintiff faces irreparable harm if the failure to act persists, a fact which is well known to Defendants.

97.     Additionally, the delay is unreasonable in light of USCIS's own statements that FBI Name Checks are resolved within two weeks in 80% of cases, and most of the remaining 20% are resolved in the following two weeks.

98.     Further, the failure of Defendants to adjudicate Plaintiff's Immigration Benefits Applications within a reasonable time, especially in the context of the reasons for the delays being

an unlawful withholding violates the APA, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

99.    Further, Plaintiff alleges impropriety.  On the past New Year's Eve, December 31, 2025, when people across the world were making resolutions about their goals and hopes for the new year, the Department of Homeland Security (the department which housing USCIS), made a post on the social media provider X romanticizing the administration's vision of US free from any immigrants at all, which already has over 20 million views. See: https://x.com/DHSgov/status/2006472108222853298?s=20.  As the entire U.S. foreign-born population is only 47 million people (most of them legal immigrants),  when the administration talks about "100 Million Deportations," that implies deporting the entire U.S. foreign-born population in the U.S., including Plaintiffs here, as well as 53 million native-born U.S. citizens. Defendants' Policy Memorandums are just an early step in satisfying DHS's resolution for 2026. If this behavior does not demonstrate impropriety, it is difficult to imagine a scenario that could.

100.    As a result of Defendants' actions and failure to act, Plaintiff has suffered and will continue to suffer injury.  No alternative remedy exists to compel action by Defendants.

**COUNT THREE: The Policy Memorandums' "Hold" is Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law, 5 U.S.C. 706(2)(A)**

101.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

102.    The APA provides that a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be… "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A).

103.    "Agency action is valid 'if a reasonable basis exists for [the agency's] decision." *Pacito v. Trump*, 768 F. Supp. 3d 1199, 1232 (W.D. Wash. 2025) (finding plaintiffs were likely

succeed on their claims that Executive Order 14163, Realigning the United States Refugee Admissions Program ("EO 14163") was arbitrary and capricious) (currently subject to an interim stay pending the outcome of appeal). In *Pacito*, the court found that the government Defendant "did not, as is required under arbitrary-and-capricious review, acknowledge, let alone meaningfully consider, the reliance interests of refugees, U.S. citizens, and resettlement nonprofits harmed by their actions." *Id.* at 1233. "Nor did they articulate any consideration of alternative options." *Id.*

104.    Here, like in *Pacito*, Defendants did not acknowledge, let alone meaningfully consider, the reliance interests of the Immigration Benefits Applications harmed by their actions. Thus, Defendants' decision to withhold adjudications was arbitrary and capricious, and the Court should enjoin.

**COUNT FOUR: Agency Action Without Observance of Procedure Required by Law In Violation of 5 U.S.C. § 706(2)(D)**

105.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.    The APA requires administrative agencies to follow notice-and-comment rulemaking procedures to promulgate substantive rules. 5 U.S.C. § 553.

107.    The Administrative Procedure Act defines "rule" broadly to include "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages…" 5 U.S.C. § 551(4).

108.    Defendants promulgated and relied upon the policies, procedures, and practices placing on hold all pending benefits requests for aliens from countries listed in PP 10949, without

23

authority and without notice-and-comment rulemaking. Defendants' actions are therefore unlawful.

109.    Defendants' policies, procedures, and practices placing on hold all pending immigration benefits for nationals from 39 countries, and the Palestinian Authority, constitute a substantive rule subject to the APA's notice-and-comment requirements.

110.    Defendants' policies, procedures, and practices suspending the adjudication of immigration benefits for citizens from 39 countries plus the Palestinian Authority constitute a substantive rule because it affirmatively circumscribes USCIS's Congressional mandate and nondiscretionary duty to adjudicate and issue decisions for properly submitted immigration applications.

111.    Defendants' policies, procedures, and practices halting the adjudication of pending immigration benefits constitute a substantive rule because it is a categorical rule that applies to almost all pending benefits, including the Immigration Benefits Applications for applicants of 39 countries, plus the Palestinian Authority.

112.    In implementing USCIS's policies, procedures, and practices halting adjudication of immigration benefits for beneficiaries from 39 countries, plus the Palestinian Authority, Defendants impermissibly announced a new rule without undertaking notice-and-comment rulemaking.

113.    Plaintiff was harmed, and continues to be harmed, by these unlawful acts.

### COUNT FIVE: Immigration and Nationality Act,  8 U.S.C. § 1152(a)(1)(A)

114.    Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

115.     Under the INA, Plaintiff has a right to be free from discrimination based on their ethnicity and national origin. *See* 8 U.S.C. § 1152(a)(1)(A) ("[N]o person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence.").

116.     Here, Defendants promulgated the Policy Memorandums that withhold USCIS benefits based upon an applicant's national origin in direct violation of the Nondiscrimination Clause of the INA. Thus, Defendant's Policy Memorandums violate the INA, and should be enjoined by the Court.

### COUNT SIX: Equal Protection, Fifth Amendment of the U.S. Constitution

117.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

118.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law."  The Clause contains an equal protection component.

119.     The Policy Memorandums cause discrimination against Plaintiff, who is physically present in the United States, on the basis of national origin, a suspect classification, and are not narrowly tailored to serve a compelling governmental interest, and thereby violate the equal protection component of the Due Process Clause.

120.     Further, Defendants lack any true rational basis for the national origin discrimination.

121.     Nationality is not a permissible criterion for domestic adjudication of adjustment of status.

122.     Additionally, the Policy Memorandums were substantially motivated by an intent to discriminate against citizens from travel ban countries, thereby imposing a disparate effect on them, in further violation of the equal protection component of the Due Process Clause.

123.     Thus, the Policy Memorandums' hold on adjudications of Plaintiff's applications should be enjoined.

### COUNT SEVEN: *Ultra Vires*

124.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

125.     The Policy Memorandums rely directly and indirectly upon authority from INA 212(f). Yet, that INA section does not provide Defendants with any authority to do anything and does not allow the president to do anything other than bar entry of a class of aliens. In fact, Defendants have no authority at all to completely withhold USCIS adjudications, including the adjudication of Plaintiff's Immigration Benefits Applications.

126.     The Court has inherent equitable power to enjoin actions by federal officers in excess of their lawful authority.  *See, e.g., Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019) ("The Supreme Court has 'long held that federal courts may in some circumstances grant injunctive relief against' federal officials violating federal law.") (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015)); *E.V. v. Robinson*, 906 F.3d 1082, 1090–91 (9th Cir. 2018) (acknowledging freestanding cause of action for "suits alleging that a federal official acted ultra vires of statutorily delegated authority" or "violated the Constitution"); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189–190 (D.C. Cir. 2006) ("[J]udicial review is available when an agency acts ultra vires, even if a statutory cause of action is lacking.") (quotation marks omitted).

26

127. A court in the Ninth Circuit recently found that the President cannot use INA § 212(f) to suspend refugee status applications, and that EO 14163 is ultra vires. *Pacito v. Trump*, 768 F. Supp. 3d 1199, 1221 (W.D. Wash. 2025). Here, like EO 14163 in *Pacito*, the Policy Memorandums direct the suspension of immigration benefits, such as the adjustment-of-status applications here, contrary to the statutory framework established by Congress for how such benefits may be obtained under INA § 245(a). INA § 245(a) confers discretion on the Secretary of Homeland Security over the grant or denial of individual adjustment applications, not authority to impose a categorical pause on the adjudication of all such applications based on national origin. Also, *Pacito* holds that the President cannot use his authority under INA § 212(f), which governs the entry of aliens, to override statutory schemes, like INA § 245(a), for immigrants already inside the U.S. Finally, unlike *Pacito* plaintiffs' challenge to EO 14163, here Plaintiffs challenging the Policy Memorandums are inside the U.S., and INA 212(f) confers no authority to the Executive Branch regarding noncitizens within the U.S.

128. Thus, the Court should enjoin the Policy Memorandums as applied to Plaintiff, as it was issued without lawful authority.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

A. Issue a writ of mandamus directing Defendants to complete all steps necessary to adjudicate Plaintiff's Form I-485, Form I-765, and Form I-131, within thirty (30) days from the date of the order;

B. Issue an order pursuant to the APA, 5 U.S.C. § 706(1) et seq., directing Defendants to take all steps necessary to adjudicate Plaintiff's Form I-485, Form I-765, and Form I-131, within thirty (30) days from the date of the order;

27

C.      Enjoin Defendant and those acting under them from any further withholding of, or delay in, the adjudication of Plaintiff's Form I-485, Form I-765, and Form I-131 either through Policy Memorandum I or Policy Memorandum II;

D.      Declare that Defendants' continued failure to adjudicate Plaintiff's Form I-485, Form I-765, and Form I-131 applications constitutes agency action unlawfully withheld and thus, unreasonably delayed;

E.      Issue an order pursuant to 8 U.S.C. § 1152(a)(1)(A) and the Due Process Clause of the Fifth Amendment of the U.S. Constitution enjoining Defendants from discriminating against Plaintiff based upon her nationality;

F.      Enjoin Defendants' Policy Memorandum I and Policy Memorandum II, as they apply to Plaintiff, for violating the INA, the Constitution, and *Ultra Vires*;

G.      Retain jurisdiction over this action and any attendant proceedings until Defendants have adjudicated Plaintiff's Form I-485, Form I-765, and Form I-131 applications, and communicated that fact to the Court;

H.      Award reasonable costs and attorney fees pursuant to the Equal Access to Justice Act, 42 U.S.C. § 1988, 5 U.S.C. § 504, 28 U.S.C. § 2412, and any other applicable law; and

I.      Grant such further relief as this Court deems just and proper.

Dated: February 6, 2026                    Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
1200 Brickell Avenue, Suite 700
Miami, Florida 33131
E-mail: rodrigo@rdasilvalaw.com
Telephone:     (305) 615-1434
Facsimile:     (305) 615-1435

By: /s/ *Rodrigo S. Da Silva*
Rodrigo S. Da Silva, Esq.
*Counsel for Plaintiff Milka Auristela Ortega Cortez*

29