**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

---

MILKA AURISTELA ORTEGA CORTEZ, an individual

                Plaintiff,

vs.

JOSEPH B. EDLOW, Director of U.S. Citizenship and Immigration Services; KRISTI NOEM, Secretary of U.S. Department of Homeland Security, U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, Attorney General of the United States; and JASON A. REDING QUIÑONES, United States Attorney for the Southern District of Florida
                Defendants.

---

Case No.: 1:26-cv-20813-JB

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFF'S *EXPEDITED*[1] MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**

1.      Plaintiff, Milka Auristela Ortega Cortez ("Plaintiff"), by and through her undersigned *pro bono* counsel, respectfully moves this Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction order enjoining Defendants' hold on decisions on Plaintiff's Forms: (i) I-485, *Application to Register Permanent Resident Status or Adjust Status* ("Form I-485"); I-765, *Application for Employment Authorization* ("Form I-765"); and I-131, *Application for Travel Document (Advance Parole)* ("Form I-131") (collectively, the "Immigration Benefits Applications") that is pursuant to the December 2, 2025 USCIS Policy Memorandum (PM-602-0192), and January 1, 2025 USCIS Policy Memorandum (PM-602-0194). Further, given the unreasonable delays that Plaintiff has experienced due to Defendants Joseph B. Edlow, Director, U.S. Citizenship and Immigration Services ("Edlow"); Kristi Noem, Secretary of U.S. Department of Homeland Security ("Noem"); Pamela Bondi, Attorney General of the United

---

[1] As set out in this Motion, Plaintiff is suffering imminent irreparable harm in the absence of preliminary relief, including professional disruptions, family separations, educational impacts, financial instability, and medical concerns. Accordingly, Plaintiff respectfully requests an expedited briefing and the scheduling of a hearing at the Court's earliest opportunity.

States ("Bondi"); and Jason A. Reding Quiñones, United States Attorney for the Southern District of Florida ("Reding") (collectively, "Defendants") unlawful withholding of decisions, Plaintiff also moves this court to compel Defendants to adjudicate the Immigration Benefits Applications within 30 days.  In support thereof, Plaintiff states as follows:

## INTRODUCTION

2.      Through this motion, Plaintiff, who has all submitted the Immigration Benefits Applications to U.S. Citizenship and Immigration Services ("USCIS"), seeks preliminary injunctive relief pursuant to Fed. R. Civ. P. 65 enjoining Defendants' hold on decisions of those applications pursuant to the December 2, 2025 USCIS Policy Memorandum (PM-602-0192) ("Policy Memorandum I") and January 1, 2026 USCIS Policy Memorandum (PM-602-0194) ("Policy Memorandum II") (collectively, the "Policy Memorandums").

3.      Plaintiff has properly submitted her applications, yet Defendants' hold has caused her to endure financial hardship, face existential crises in her career, and caused her emotional distress and anxiety related to the uncertainty of their continued lawful immigration status.  As the hold on the adjudication of her Immigration Benefits Applications continues, it will cause Plaintiff's inability to engage in gainful employment, inability to pay for her living expenses, risk losing job offers, prevent her from attending educational institutions, and engage in temporary travel outside of the United States.  In light of the lack of protection of lawful permanent resident status, she is afraid to leave her home during heightened ICE activity in their communities.  *See* **Exhibit A**, Declaration of Plaintiff.

4.      Given the unreasonable delays that Plaintiff has experienced due to Defendants' unlawful withholding of decisions on her Immigration Benefits Applications, Plaintiff further moves this court to compel Defendants to adjudicate them within 30 days.

## RELEVANT FACTS

5.      Plaintiff filed the Immigration Benefits Applications, and USCIS acknowledged the applications with receipt notices, each with a unique receipt number.  *See* **Exhibit B**, USCIS Receipt Notices for Plaintiff's Immigration Benefits Applications.

6.      On June 4, 2025, President Donald Trump issued Presidential Proclamation 10949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats* ("PP 10949"),

https://www.whitehouse.gov/presidential-acions/2025/06/restricting-the-entry-of-foreign-nationals-to-protect-the-united-states-from-foreign-terrorists-and-other-national-security-and-public-safety-threats/ (last accessed on February 18, 2026).

7.      On December 2, 2025, USCIS published Policy Memorandum I that placed adjudications of immigration benefits from individuals from certain countries[2] on an indefinite hold.  Policy Memorandum I explicitly "directs U.S. Citizenship and Immigration Services (USCIS) personnel to: . . . (2) *Place a hold* on pending benefit requests for aliens from [nineteen] countries listed in Presidential Proclamation (PP) 10949, Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats pending a comprehensive review, regardless of entry date."  ECF No. 1-1, at 2 (emphasis added).

8.      On December 16, 2026, President Donald Trump issued Presidential Proclamation 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States* ("PP 10998").  As PP 10998 went into effect on January 1, 2026, individuals from the following 39 countries, plus Palestinian Authority, are now subject to a ban on entry into the U.S.: Afghanistan, Angola, Antigua and Barbuda, Benin, Burkina Faso, Burma, Burundi, Chad, Republic of the Congo, Cote d'Ivoire, Cuba, Dominica, Equatorial Guinea, Eritrea, Haiti, Gabon, The Gambia, Iran, Laos, Libya, Malawi, Mali, Mauritania, Niger, Nigeria, Palestinian Authority, Sierra Leone, Senegal, Somalia, South Sudan, Sudan, Syria, Tanzania, Togo, Tonga, Turkmenistan, Venezuela, Yemen, Zambia, and Zimbabwe.  PP 10949; PP 10998.

9.      On January 1, 2026, USCIS published Policy Memorandum II, which expanded the hold to individuals from 11 additional countries, including the Palestinian Authority.  ECF No. 1-2.  Pursuant to Policy Memorandum II, individuals from 39 countries, plus the Palestinian Authority, noted above, are now subject to a hold on USCIS benefits due to Policy Memorandums.

10.      Plaintiff is subject to the hold because she is citizen of Venezuela.  Plaintiff has been waiting far beyond normal processing times.  For example, USCIS's published median processing time establishes the following adjudication timelines: (i) Form I-485 based on grant of asylum more than 1 year ago: **22.6 months**; (ii) for Form I-765 category (c)(9): **2.2 months**; (iii)

---

[2] USCIS uses the term "high-risk countries" pointing to the travel ban proclamations for definition.  Plaintiffs reject this term because it implies threats that exist only in the imagination of certain government officials.

3

for Form I-131 is **6 months**, *see* https://egov.uscis.gov/processing-times/historic-pt (last accessed on February 18, 2026). Here, Plaintiff's Form I-485 has been pending for **45 months**. In addition, Plaintiff's Form I-131 has been pending for **25 months,** whereas Plaintiff's Form I-765 has been pending for **12 months**.

11. Now, regardless of where the Plaintiff's Immigration Benefits Applications were in the adjudication processes before the Policy Memorandums, they are all now in the same boat, facing the same hold on her applications with no timeline for resolution, absent the Court's intervention.

## MEMORANDUM OF LAW

### I.    PRELIMINARY INJUNCTION STANDARD

To obtain the extraordinary relief of a preliminary injunction, a plaintiff must establish the following 4 factors: (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury if the injunction is not issued; (3) that the threatened harm to the plaintiff outweighs the potential harm to the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561-62 (11th Cir. 1989), *aff'd*, 498 U.S. 479 (1991); *Shatel Corp. v. Maota Lumber and Yacht Corp.*, 697 F.2d 1352, 1354-55 (11th Cir. 1983). The entry or denial of a preliminary injunction is a decision within the discretion of the trial court. *Haitian Refugee*, 872 F.2d at 1561.

### II.    ARGUMENT

#### A. Plaintiff has a likelihood of succeeding on the merits with all her causes of action

##### 1. Plaintiff is likely to succeed on her COUNT ONE: 28 U.S.C. § 1361, Writ of Mandamus

In Count One of her Complaint, Plaintiff argues Defendants owe them a duty to act upon her Immigration Benefits Applications, and no alternative remedy exists to compel action by Defendants. ECF No. 1, ¶¶ 74-89.

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A mandamus plaintiff must demonstrate 3 essential elements: (1) a clear right to the relief sought, (2) a clear duty on the part of the defendant to

perform the act in question, and (3) the absence of any other adequate remedy available to the plaintiff. *Parrish v. Seamans*, 343 F. Supp. 1087, 1094 (D.S.C. 1972).  Here, Plaintiffs meet all criteria.

Plaintiff has a clear right to have her Immigration Benefits Applications adjudicated because she submitted all necessary information and evidence supporting the applications and paid all applicable USCIS fees, attended biometric appointments, and required interview.  *See* **Exhibit B**, USCIS Receipt Notices.  Defendants have a clear duty to adjudicate Immigration Benefits Applications because courts have held that the duty to render a decision on an application is mandatory even where the underlying decision to be made by the agency is a discretionary one; thus, mandamus actions are appropriate to compel the government to exercise its discretion in a case where the government has failed to take any action.  *See, e.g., Villa v. United States Dep't of Homeland Sec.*, 607 F. Supp. 2d 359, 363 (N.D.N.Y. 2009) (duty to adjudicate adjustment application in a reasonable amount of time); *Dabone v. Thornburgh*, 734 F. Supp. 195, 200 (E.D. PA. 1990) (holding the Board of Immigration Appeals owed the plaintiff a duty to adjudicate his motion to reopen an exclusion proceeding).  Specifically, USCIS has a "non-discretionary duty to adjudicate the I-485 application within a reasonable time."  *Gonzalez v. Paul*, No. 3:20-cv-00971-AC, U.S. Dist. LEXIS 247199, at *22 (D. Or. Apr. 8, 2021); *Tufail v. Neufeld*, No. 2:14-cv-02545-TLN-CMK, 2016 U.S. Dist. LEXIS 53035, at *16 (E.D. Cal. Apr. 19, 2016) (same); *Sedighi v. Mukasey*, No. 07-cv-1881-BR (D. Oregon Jan. 7, 2009) (finding "the majority of district courts in the Ninth Circuit as well as numerous other courts have concluded the duty to adjudicate applications for adjustment of status is not discretionary even though the ultimate decision as to whether to grant an adjustment of immigration status is discretionary.").  Further, no other adequate remedy is available.

Finally, nothing in the Immigration and Nationality Act ("INA") authorizes USCIS to suspend adjudications *en masse*, to replace individualized assessments with nationality-based review, or to convert the President's authority under 8 U.S.C. § 1182(f) over the entry of foreign nationals to the United States into a *wholesale domestic adjudication moratorium*.  The INA assigns USCIS mandatory adjudicatory duties and expressly prohibits, through 8 U.S.C. § 1152(a)(1)(A), nationality-based discrimination in the allocation of immigration benefits.

Thus, Plaintiff is likely to succeed on her claim that the Court should issue a writ of mandamus directing Defendants to complete all steps necessary to adjudicate the Immigration Benefits Applications for Plaintiff within thirty (30) days from the date of the order.

### 2. Plaintiff is likely to succeed on her COUNT TWO: Administrative Procedure Act, 5 U.S.C. § 555(b) § 706(1) et seq.

In Count Two of her Complaint, Plaintiff argues that Defendants' actions to withhold decisions on their applications (through the Policy Memorandums), and to unreasonably delay her applications, violate the Administrative Procedures Act ("APA").  ECF No. 1, ¶¶ 90-100.

"Plaintiff's different backgrounds and circumstances do not prevent joinder of their claims in this case because Plaintiffs do not allege that USCIS's delay is specific to their individual applications," rather, "Plaintiffs allege that USCIS's internal policies and practices have caused an unreasonable delay in dealing with all applications [in their common situation]."  *Lopez v. Jaddou*, No. 4:24-cv-2128, 2025 U.S. Dist. LEXIS 229238, at *22 (S.D. Tex. Nov. 21, 2025).  Since Plaintiffs allege injuries resulting from a common set of policies or practices by USCIS, the Court finds that Plaintiffs satisfy the same transaction test.  *Id.* (citing *Wagner v. Harris Cnty.*, No. 4:23-cv-02886, 2024 WL 1639910, at *2 (S.D. Tex. Apr. 15, 2025); *Hernandez v. Jaddou*, 792 F. Supp. 3d 739, 745 (S.D. Tex. 2025) ("Plaintiffs' varied backgrounds and circumstances do not prevent the joinder of their claims because Plaintiffs do not allege that the delay is specific to their individual applications.").

### a. Unlawful Withholding

Under section 706(1) of the APA, the court may "compel agency action unlawfully withheld . . ." 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004).  A plaintiff can proceed under section 706(1) only where she "asserts that an agency failed to take discrete agency action that is required to take."  *Norton*, 542 at 64.

*First*, in another case in California, a District Director for USCIS conceded that the agency has "a mandatory duty to act" on an Adjustment of Status application.  *Singh v. Still*, 407 F. Supp. 2d 1064, 1068 (N.D. Cal. 2007).  Moreover, "[r]egulations support there being such a duty."

*Second*, "[i]n the absence of a grant of discretion in the INA over whether or not [USCIS] must conclude adjudication of an application for adjustment of status, . . . the APA dictates that [USCIS] must conclude that adjudication for adjustment status.  *Shah v. Hansen*, No. 1:07 CV 1576, 2007 U.S. Dist. LEXIS 80636, at *14 (N.D. Ohio Oct. 31, 2007).

*Third*, to the extent Defendants argue they can lawfully withhold adjudication under 8 C.F.R. § 103.2(b)(18), they have not followed the procedures of that section.  To start with, no "investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion."  8 C.F.R. § 103.2(b)(18).  Simply, Plaintiff's national origin is not a matter relating to eligibility or the exercise of discretion.  But also, even if the Policy Memorandums were lawful, they do not mandate an investigation, but a "individualized, case-by-case review and assessment." ECF No. 1-1, at 2.  Accordingly, Plaintiff is likely to succeed on her claim that Defendants unlawfully withheld the adjudications of her applications.

### b.  Unreasonable Delay

Under section 706(1) of the APA, the court may "compel agency action 'unreasonably delayed.'"  5 U.S.C. § 706(1).  Defendants have no discretionary duty to act "within a reasonable time" upon matters presented to them, and a court may compel agency action unlawfully withheld or unreasonably delayed.  APA, 5 U.S.C. § 555(b); 5 U.S.C. § 706(1).  Defendants' failure to adjudicate the Immigration Benefits Applications violate the APA.  APA, 5 U.S.C. § 555(b); 5 U.S.C. § 706(1), 706(2)(A), 706(2)(C), 706(2)(D).

Plaintiff states a cause of action for unreasonable delay here because Defendants are mandated by the INA to adjudicate the Immigration Benefits Applications, but they have failed to do so here within a reasonable time.  Defendants do not have the discretion to withhold decisions, or unreasonably delay decisions on Plaintiff's applications based upon that unlawful withholding.

In *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 77-78 (D.C. Cir. 1984), the court set out factors to determine whether an administrative delay is reasonable ("*TRAC* factors").  In determining whether the Defendants have unreasonably delayed the complete and proper adjudication of the Immigration Benefits Applications, 5 U.S.C. § 706(1), this court could balance the following *TRAC* factors: (1) the time agencies take to make decisions must be governed by a "rule o reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold

that agency action is unreasonable delayed. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021) (citing *TRAC*, 750 F.2d at 80) (internal citations omitted). "The district court is not limited to these factors and is not required to use them, but the *TRAC* factors offer helpful guidance in this inquiry, even if they do not define the entire field." *Id.*

### 1.   Rule of Reason

The first *TRAC* factor requires that agency decision-making be governed by a rule of reason. "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, No. C 06-06724 WHA, 2007 U.S. Dist. LEXIS 26466, at *5 (N.D. Cal. Mar. 22, 2007) (citations omitted). "Thus, courts have 'look[e]d to the source of the delay -e.g., the complexity of the investigation as well as the extent to which the defendant[s] participated in delaying the proceeding.'" *Qureshi v. Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828, at *4 (N.D. Cal. Jun. 28, 2012) (citations omitted). Simply, "the **reason** *for* the **delay** is relevant to determine whether any delay is **reasonable**." *Najafi v. Pompeo*, No. 19-cv-05782-KAW, 2019 U.S. Dist. LEXIS 184351, at *8 (N.D. Cal. Oct. 23, 2019) (emphasis in original).

Here, USCIS has imposed an indefinite suspension on adjudications based solely on applicants' nationality, with no timeline for resolution or individualized assessment. This blanket suspension includes not only decisions, but also interviews, and violates any reasonable standard for agency action. Further, as set out above, Plaintiff has been waiting far beyond normal processing timeframes. Further yet, Defendants are not hiding the ball. The reason for the delay is the Policy Memorandums. Policy Memorandum I, for example, explicitly "directs U.S. Citizenship and Immigration Services (USCIS) personnel to: . . (2) *Place a hold* on pending benefit requests for aliens from countries listed in Presidential Proclamation (PP) 10949, Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats, pending a comprehensive review, regardless of entry date." ECF No. 1-1, at 2 (emphasis added). Finally, as the reason for the delay is Defendants' unlawful withholding, any delay –no matter the length – is unlawful and thus unreasonably delayed. Thus, this factor tips in the Plaintiff's favor.

### 2.   Congressional timetable

"The presence of a statutory scheme – a congressionally-mandated timetable with which Congress expects the agency to proceed – may 'supply content' for the 'rule of reason' stated in

8

factor one." *Qureshi*, No. C-11-05814-YGR, 2012 WL 2503828, at *6 (N.D. Cal. June 28, 2012) (citing *TRAC*, 750 F.2d at 80).  Congress has indicated the speed with which it expects the agency to proceed in the enabling statute, to wit, 8 U.S.C. § 1571(b), which provides that the processing of an immigration benefit application should be completed no later than 180 days after the initial filing of the application.  Courts have found that § 1571(b) provides "an indication of the speed in which it expects the agency to proceed." *Sheiner v. Mayorkas*, 2023 U.S. Dist. LEXIS 54398, at *18 (S.D.N.Y. 2023).  The indefinite nature of the current suspension directly contravenes this intent by creating an open-ended hold with no resolution mechanism.  Thus, this factor tips in the Plaintiff's favor.

### 3.   Dangers to Human Health and Welfare

The third *TRAC* factor recognizes that delays affecting human health and welfare are less tolerable than those in economic regulation.  *Gonzalez*, 985 F.3d at 375.  Family separation constitutes a severe welfare impact.  Plaintiffs have suffered profound personal hardship that directly impacts their health and welfare, and thus, this factor tips in their favor.  *Motegehedi v. Pompeo*, Case No. 1:19-cv-01466-LJO-SKO (N.D. Cal. Jan. 14, 2020) (quoting *Doe v. Risch*, 398 F. Supp. 3d 647, 657-58 (N.D. Cal. 2019) (holding "health and human welfare" and "interests prejudice" *TRAC* factors tip in plaintiffs' favor where family separation caused plaintiffs to suffer extreme anxiety and depression)).

Here, Plaintiff is unable to temporarily travel outside the U.S. to visit her daughter, whom she hasn't seen in approximately 8 years.  **Exhibit A**, ¶ 4.  As her mother is elderly, she fears she will never see her again.  **Exhibit A**, ¶ 7.  The indefinite nature of the suspension has caused severe emotional distress.

### 4.   Competing Priorities and Nature of Delay

This "court should consider the effect of expediting delayed action on agency activities of a higher or competing priority." *Independence Mining Co., Inc.*, 105 F.3d 502, 507 n.7.  The Court "should also consider the nature and extent prejudiced by the delays." *TRAC* at 80 (citations omitted).  Here, the agency's competing priorities are a difficult metric to analyze because Defendants have abandoned all pretense of competing priorities by prioritizing only a blanket hold of adjudications with no acknowledgment, even superficial, related to the Plaintiffs' interests in their benefit decisions.  ECF No. 1-1.

To the extent Defendants suggest their actions are justified with a mere invocation of national security, completely unrelated to Plaintiff as an individual, that does not cut it. "[T]he mere invocation of national security is not enough to render agency delay reasonable per se." *Singh*, 470 F. Supp. 2d 1064, 1069.

The suspension undermines USCIS's core mission by preventing adjudication of meritorious cases. Finally, USCIS adjudicates immigration benefit applications for foreign nationals who are not from travel ban countries. That means those applicants are skipping in line in front of the Plaintiffs, and that rebuts any presumption the government is fairly operating a line or queue by filing date. *Abdulai v. Ashcroft*, 239 F.3d 542, 550 (3d Cir. 2001) (because agency action is entitled to a presumption of regularity, it is incumbent upon the petitioner to establish error). Accordingly, this factor tips in favor of the Plaintiff.

### 5. Nature and Extent of Prejudice

The delays cause irreparable professional harm that cannot be remedied by later adjudication. Plaintiff has been unable to renew her employment authorization which expired in April 2025, and her I-765 to renew it has been pending for approximately 12 months, leaving her without income. **Exhibit A**, ¶¶ 3, 6. Also, Plaintiff is afraid that she will not be able to renew her Florida driver's license, which is set to expire in April 2026. **Exhibit A**, ¶ 9.

### 6. Impropriety

This court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *TRAC* at 70 (D.C.C. 1984). But here, the bad faith is not even lurking, but in full view in government propaganda. On the past New Year's Eve, December 31, 2025, when people across the world were making resolutions about their goals and hopes for the new year, the Department of Homeland Security (the department housing USCIS), made a post on the social media provider X romanticizing the administration's vision of a U.S. free from any immigrants at all, which already has over 20 million views. *See* https://x.com/DHSgov/status/2006472108222853298?s=20 (last accessed on Feb. 7, 2026). As the entire U.S. foreign-born population is only 47 million people (most of those are legal immigrants),[3] when the administration talks about "100 Million Deportations," that implies deporting the entire U.S. foreign-born population in the U.S., including Plaintiff here, as well as

---

[3] https://www.census.gov/quickfacts/fact/table/US/POP645223#POP645223

53 million native-born U.S. citizens.  Defendants' Policy Memorandums are just an early step in satisfying DHS's resolution for 2026.  If this behavior does not demonstrate impropriety, it is difficult to imagine a scenario that could.  This factor should weigh in the Plaintiff's favor.

Therefore, Plaintiff is likely to succeed on her claim that Defendants have unreasonably delayed the adjudications of their applications, especially in light of the unlawful withholding of those applications.

> **3.  Plaintiff is likely to succeed on her COUNT THREE: Agency Action that is Arbitrary, Capricious, and Abuse of Discretion, or Otherwise Not in Accordance with Law, 5 U.S.C. § 706(2)(A).**

In Count Three of her Complaint, Plaintiff argues that the Policy Memorandums' hold on the Immigration Benefits Applications is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  ECF No. 1 ¶¶ 101-104.

"Agency action is valid 'if a reasonable basis exists for [the agency's] decision." *Pacito v. Trump*, 768 F. Supp. 3d 1199, 1232 (W.D. Wash. 2025) (finding plaintiffs were likely to succeed on their claims that Executive Order 14163, *Realigning the United States Refugee Admissions Program,* was arbitrary and capricious) (currently subject to an interim stay pending the outcome of appeal).  In *Pacito*, the court found that the government Defendant "did not, as is required under arbitrary-and-capricious review, acknowledge, let alone meaningfully consider, the reliance interests of refugees, U.S. citizens, and resettlement nonprofits harmed by their actions."  *Id.* at 1233.  "Nor did they articulate any consideration of alternative options."  *Id.*  Here, like in *Pacito*, Defendants did not acknowledge, let alone meaningfully consider, the reliance interest of the Immigration Benefits Applications harmed by their actions.  Nor did Defendants acknowledge the harm done to the United States in preventing eligible immigrants from obtaining permanent lawful status to work and live in the U.S.

Thus, Plaintiff is likely to succeed on her claim that Defendants' "hold" on the Immigration Benefits Applications is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and should thus be enjoined.

> **4.  Plaintiff is likely to succeed on her COUNT FOUR: Agency Action Without Observance of Procedure Required by Law In Violation of 5 U.S.C. § 706(2)(D).**

In Count Four of her Complaint, Plaintiff argues that with the Policy Memorandums' "hold" on the Immigration Benefits Applications, Defendants have failed to follow notice-and-

comment rulemaking procedures to promulgate substantive rules.  5 U.S.C. § 553.  ECF No. 1 ¶¶ 105-113.

The APA defines "rule" broadly to include "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages . . ." 5 U.S.C. § 551(4). Defendants promulgated and relied upon the policies, procedures, and practices placing on hold pending benefits requests for aliens from countries listed in PP 10949 and PP 10998, without authority and without notice-and-comment rulemaking.  Defendants' actions are therefore unlawful.

Defendants' policies, procedures, and practices placing a hold on pending immigration benefits for nationals from 39 countries, plus the Palestinian Authority, constitute a substantive rule subject to the APA's notice-and-comment requirements, and because they affirmatively circumscribe USCIS's Congressional mandate and nondiscretionary duty to adjudicate and issue decisions for properly submitted immigration applications.

Further, Defendants' policies, procedures, and practices placing a hold on the adjudication of pending immigration benefits constitute a substantive rule because it is a categorical rule that applies to almost all, probably 99% of pending benefits for applicants of 39 countries, plus the Palestinian Authority.  In implementing USCIS's policies, procedures, and practices halting adjudication of immigration benefits for beneficiaries from 39 countries plus the Palestinian Authority, Defendants impermissibly announced a new rule without undertaking notice-and-comment rulemaking.  Finally, Plaintiff was harmed and faces even worse imminent harm due to these unlawful acts.

Thus, Plaintiff is likely to succeed on her claim that Defendants failed to follow notice-and-comment rulemaking procedures to promulgate substantive rules.

### 5. Plaintiff is likely to succeed on her COUNT FIVE: Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A).

In Count Five of her Complaint, Plaintiff argues that Defendants promulgated the Policy Memorandums that withhold USCIS benefits based upon the applicants' national origin in direct violation of the Nondiscrimination Clause of the INA.  ECF No. 1 ¶¶ 114-116.

12

"[N]o person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."  8 U.S.C. § 1152(a)(1)(A).  With each decision approving a Form I-485, USCIS uses an immigrant visa number allocated by the State Department.[4]  Even the Supreme Court has found that "§1152(a)(1)(A) prohibits discrimination in the *allocation of immigrant visas* based on nationality and other traits."  *Trump v. Hawaii*, 585 U.S. 667, 695 (2018) (emphasis added).  However, *Hawaii* also found "that Congress did not intend for §1152(a)(1)(A) to limit the President's flexible authority *to suspend entry* based on foreign policy interests.  *Hawaii*, 585 U.S. 696 (emphasis added).

Plaintiff concedes there is no case law on the issue of whether §1152(a)(1)(A) applies to USCIS actions, but that is because USCIS has never placed a national origin hold on benefits before.  This is a first.  If §1152(a)(1)(A) does not prohibit national origin discrimination for foreign nationals seeking to enter the U.S., and it does not prohibit national origin discrimination for foreign nationals within the U.S., this would give the absurd result of the provision not preventing any national origin discrimination for foreign nationals, anytime, anywhere.  Courts are disinclined to adopt "statutory interpretations which would produce absurd results."  *Iqbal v. Blinken*, No. 2:23-cv-01299-KJM-KJN, 2023 U.S. Dist. LEXIS, at *20 (E.D. Cal. Nov. 8, 2023) (quoting *Compton Unified Sch. Dist. V. Addison*, 598 F.3d 1181, 1184 (9th Cir. 2010)).

Stated simply, "issuance of an immigrant visa" in §1152(a)(1)(A), in the context of the statutory structure of the INA and the Supreme Court's interpretation, means the allocation of an immigrant visa.  Thus, Plaintiff is likely to succeed on her claim that the Policy Memorandums that withhold benefits based upon their national origin are in direct violation of the Nondiscrimination Clause of the INA.

---

[4] USCIS Policy Manual, Volume 7 – Adjustment of Status, Part A – Adjustment of Status Policies and Procedures, Chapter 6, Adjudicative Review, https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6#:~:text=C.-,Verify%20Visa%20Availability,of%20final%20adjudication%2C%20if%20approved,   ("The Immigration and Nationality Act (INA) limits the number of immigrant visas that may be issued to aliens seeking to become U.S. permanent residents each year.  U.S. Department of State (DOS) is the agency that allocates immigrant visa numbers.") (last viewed Feb. 7, 2026).

**6. Plaintiff is likely to succeed on her COUNT SIX: Equal Protection, Fifth Amendment of the U.S. Constitution.**

In Count Six of her Complaint, Plaintiff argues that the Policy Memorandums discriminate on the basis of national origin, a suspect classification, and are not narrowly tailored to serve a compelling government interest, and thereby violate the equal protection component of the Due Process Clause. ECF No. 1, ¶¶ 117-123.

The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law." The Clause contains an equal protection component. Plaintiff is physically present in the United States and is entitled to equal protection under the Fifth Amendment.

The Policy Memorandums establish a discriminatory system that violates the Equal Protection principles embedded in the Fifth Amendment's Due Process Clause. The policies impose adjudicative holds based explicitly on aliens' national origin from designated countries creating a facial classification that triggers heightened constitutional review.

Classifications based on national origin are subject to strict scrutiny analysis. *United States v. Skrmetti*, 605 U.S. 495, 510 (2025). Laws that classify on the basis of national origin "trigger strict scrutiny and will pass constitutional muster only if they are suitably tailored to serve a compelling state interest." *Id.* This heightened scrutiny applies even in the immigration context when examining federal government actions under Fifth Amendment Due Process principles. *Id.*

The Supreme Court has recognized that even in immigration contexts, classifications based on alienage are "inherently suspect and subject to close judicial scrutiny" because "aliens as a class are a prime example of a discrete and insular minority for whom such heightened judicial solicitude is appropriate." *Graham v. Richardson*, 403 U.S. 365, 372 (1971).

The Policy Memorandums discriminate on the basis of national origin, a suspect classification, and are not narrowly tailored to serve a compelling governmental interest, and thereby violate the equal protection component of the Due Process Clause. Additionally, the Policy Memorandums were substantially motivated by an intent to discriminate against citizens from travel ban countries, thereby imposing a disparate effect on them, in further violation of the equal protection component of the Due Process Clause.

Nationality is not a permissible criterion for domestic adjudication of adjustment of status, or employment authorization. Here, the directives revive a form of nationality and/or place of

14

birth discrimination Congress abolished in 1965.  INA of 1965, Pub. L. No. 89-236 (repudiating nationality-based allocation in the INA).  Notably, the Department of Justice has a division, the Civil Rights Division, which prosecutes crimes that are based upon national origin.[5]

Further, "even where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." *Electricities of N.C., Inc. v. Se. Power Admin.,* 774 F.2d 1262, 1267 (4th Cir. 1985); *see also National TPS Alliance v. Noem*, No. 3:25-cv-05687-TLT (N.D. Cal. 2025) (stating that "absent clear congressional intent to preclude review of a constitutional claim, [5 U.S.C. § 701(a)(2)] does not bar review of colorable constitutional claims arising from agency actions 'committed to agency discretion by law'"); *see also Webster v. Doe*, 486 U.S. 592, 601, 603 (1988) (stating that "the language and structure of § 102(c) [of the National Security Act] indicate that Congress meant to commit individual employee discharges to the Director's discretion, and that § 701(a)(2) accordingly precludes judicial review of these decisions under the APA" and stating "[w]e do not think § 102(c) may be read to exclude review of constitutional claims")).

To the extent Defendants argue INA § 212(f) somehow gives them a safe harbor, they are wrong.  The government's reliance on INA § 212(f) cannot cure constitutional violations.  While this provision grants broad executive authority over who cannot enter the U.S., it cannot authorize policies that violate constitutional equal protection and due process requirements for those already here.  The statute must be interpreted consistently with constitutional limitations.

Moreover, to the extent Defendants argue that the Policy Memorandums are only subject to rational basis review pursuant to *Midi v. Holder*, 566 F.3d 132, 137 (4th Cir. 2009), they will be wrong because the exception only applies to "unadmitted aliens," which does not describe the Plaintiff here.  Accordingly, Plaintiff is likely to succeed on her claim that the Policy Memorandums' implementation of the national origin criterion is unconstitutional, and thus, this criterion should be enjoined as applied to Plaintiff.

---

[5] https://www.justice.gov/crt/federal-protections-against-national-origin-discrimination-1 (last accessed February 18, 2026)

**7.   Plaintiff is likely to succeed on her COUNT SEVEN: *Ultra Vires*.**

In Count Seven of her Complaint, Plaintiff argues that the Policy Memorandums should be enjoined as *ultra vires*, as they were issued without lawful authority.  ECF No. 1, ¶¶ 124-128.

The Policy Memorandums rely directly and indirectly upon INA 212(f).  Yet, that INA section does not provide Defendants with any authority to do anything outside of barring entry of a class of aliens.   In fact, Defendants have no authority to completely withhold USCIS adjudications, including the adjudication of Plaintiff's Immigration Benefits Applications.

The Court has inherent equitable powers to enjoin actions by federal officers in excess of their lawful authority.  *See, e.g., Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019) ("The Supreme Court has 'long held that federal courts may in some circumstances grant injunctive relief against' federal officials violating federal law.") (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015)); *E.V. Robinson*, 906 F.3d 1082, 1090-91 (9th Cir. 2018) (acknowledging freestanding cause of action for "suits alleging that a federal official acted *ultra vires* of statutorily delegated authority" or "violated the Constitution"); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189-190 (D.C. Cir. 2006) ("[J]udicial review is available when an agency acts *ultra vires*, even if a statutory cause of action is lacking.") (quotations mark omitted).

Another court recently found that the President cannot use INA § 212(f) to suspend refugee status applications, and that EO 14163 is *ultra vires*.  *Pacito*, 768 F. Supp. 3d 1199, 1221.  Here, like EO 14163 in *Pacito*, the Policy Memorandums direct the suspension of immigration benefits, such as the Immigration Benefits Applications, contrary to the statutory framework established by Congress for how such benefits may be under INA § 245(a).  INA § 245(a) confers discretion on the Secretary of Homeland Security over the grant or denial of individual adjustment of status applications, not authority to impose a categorical pause on the adjudication of all such applications based on national origin.  Also, *Pacito* holds that the President cannot use his authority under INA § 212(f), which governs the entry of aliens, to override statutory schemes, like INA § 245(a), for immigrants already inside the U.S.  Finally, unlike the *Pacito* plaintiffs' challenge to EO 14163, here the Plaintiff challenging the Policy Memorandums is inside the U.S. as an asylee, and INA § 212(f) confers no authority to the Executive Branch regarding noncitizens within the U.S.

Accordingly, Plaintiff is likely to succeed on her claim that the Policy Memorandums should be enjoined as *ultra vires*, as they were issued without lawful authority.

16

**B.  Plaintiff will suffer irreparable harm absent injunctive relief.**

### 1. Legal Standard for Irreparable Harm

The second factor requires plaintiffs to demonstrate that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Haitian Refugee*, 872 F.2d at 1561-62 (11th Cir. 1989).  "Irreparable injury" in the preliminary injunction context means "an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy."  *Rio Grande Cmty Health Ctr., Inc. v. Rullan*, 397 F.3d 56 (1st Cir. 2005).  Plaintiff's declaration demonstrates that she will suffer various forms of irreparable harm if the USCIS's hold policy remains in effect.

### 2. Professional Harms

Plaintiff faces significant professional disruptions that constitute irreparable harm. Plaintiff is unable to accept job offers, advance her career, or pursue educational opportunities. **Exhibit A**,  ¶¶ 6, 8.

### 3. Family Separation

The USCIS policy causes irreparable harm by separating families.  Plaintiff is unable to travel internationally to visit family members due to the uncertainty surrounding their immigration status.  **Exhibit A**, ¶ 7.  This separation from family members, particularly during important life events or emergencies, constitutes irreparable harm that cannot be remedied through monetary compensation.

### 4. Financial Instability

The USCIS hold policy causes financial instability that constitutes irreparable harm. Plaintiff faces employment limitations and the inability to secure loans due to their uncertain immigration status.  Plaintiff is rapidly depleting her savings, and if the hold is not lifted, she may soon become bankrupt.  Courts have recognized that "a threat of substantial loss of business and certainly bankruptcy qualified as the sort of irreparable harm needed to support a preliminary injunction." *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56 (1st Cir. 2005).  Thus, the financial instability caused by the USCIS policy similarly constitutes irreparable harm.

### 5. Medical Concerns

Plaintiff's inability to secure lawful permanent resident status in the U.S. has caused her to suffer from anxiety and depression. **Exhibit A**, ¶ 7.

Courts have recognized that delays in the adjudication of immigration applications themselves constitute irreparable harm to the applicant. *See, e.g., Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 21, 42 (D.D.C. 2017) ("[D]elaying naturalization applications after applicants have been promised an expedited path to citizenship constitutes irreparable harm."); *Nio v. U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 62 (D.D.C. 2017) (Finding irreparable harm because they are not obtaining citizenship rights and benefits. And as a result of the legal limbo, their ability to travel and pursue professional and personal opportunities has been curtailed.).

Here, the threats to the well-being of Plaintiff is imminent, certain and great, actual and not theoretical, and beyond remediation. *See League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7-8 (D.D.C. 2018) (defining irreparable harm). These harms to Plaintiff's health cannot be adequately remedied through monetary damages.

### C. The balance of the equities and public interest weighs in favor of Plaintiff's request for a preliminary injunction.

The balance of equities and the public interest, which merge in cases against the government support the issuance of the limited and modest injunction Plaintiff seeks. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff is not seeking a universal injunction. Rather, Plaintiff narrowly requests only that the Court order Defendants to promptly finish adjudications of Plaintiff's pending and long-overdue Immigration Benefits Applications within 30 days. This remedy minimizes the burden on the Defendants while supporting public interest.

As detailed above, Plaintiff will suffer significant and irreparable harm if the USCIS policy remains in effect. These harms include professional disruptions, family separations, educational impacts, financial instability, and medical concerns. These harms are concrete, ongoing, and cannot be adequately remedied after the fact. In contrast, the government will suffer minimal harm if a preliminary injunction is granted. Plaintiff is not asking to bypass screening or individualized review, but rather to have her applications adjudicated on their individual merits.

Further, granting a preliminary injunction would promote compliance with the APA, the INA, and the Constitution. Courts have recognized that "the public interest in preventing harm to and the wrongful removal of noncitizens" and "the value of compliance with the APA" are

18

important considerations in the public interest analysis. *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1026 (9th Cir. 2025). The public has a strong interest in ensuring that government agencies comply with constitutional and statutory requirements.

Finally, the public has an interest in "the importance of preserving congressional intent." *Id.* Congress has established a statutory framework for adjustment of status that provides for individualized adjudications based on specific eligibility criteria. The USCIS policy's categorical suspension based on national origin undermines this congressional intent. Granting a preliminary injunction would help preserve the statutory framework established by Congress. In sum, both the balance of equities and public interest weigh in favor of Plaintiff's request for a preliminary injunction.

## CONCLUSION

Plaintiff who brings this motion has satisfied all four factors required for a preliminary injunction. They have demonstrated they are likely to succeed on the merits that USCIS's hold policy violates the APA, INA, and the Constitution. Second, Plaintiff has shown that she will suffer imminent irreparable harm in the absence of preliminary relief, including professional disruptions, family separations, educational impacts, financial instability, and medical concerns. Finally, Plaintiff has established that the balance of the equities tips decidedly in her favor and the injunction is in the public interest. Thus, this court should issue an order enjoining Defendants from applying a hold to Plaintiff's Immigration Benefits Applications, and mandating Defendants to adjudicate them within 30 days of this Court's Order.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Plaintiff hereby respectfully requests oral argument in her *Expedited* Motion for Preliminary Injunction. This case and the instant motion raise novel questions of law regarding the application of the Policy Memorandums. Given the importance of these questions to the determination of this case, Plaintiff believes that the Court's decision-making process would be significantly aided by oral argument. Plaintiff estimates one hour will be necessary for the argument.

Dated: February 18, 2026                              Respectfully submitted,

                                                      LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
                                                      1200 Brickell Avenue, Suite 700
                                                      Miami, Florida 33131
                                                      E-mail: rodrigo@rdasilvalaw.com

19

Telephone:   (305) 615-1434
Facsimile:   (305) 615-1435

By: /s/ *Rodrigo S. Da Silva*
Rodrigo S. Da Silva, Esq.
*Counsel for Plaintiff Milka Auristela Ortega Cortez*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 18, 2026, I electronically filed the foregoing document with the Clerk of the Court by CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of the Notice of Electronic Filing generated by CM/ECF, or via FEDERAL EXPRESS for those counsel/parties who are not authorized to receive electronic Notices of Electronic Filing.

Dated:  Miami, Florida
        February 18, 2026

By: /s/ *Rodrigo S. Da Silva*
    Rodrigo S. Da Silva, Esq.

20