**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-20813-CIV-BECERRA**

**MILKA AURISTELA ORTEGA CORTEZ,**

                    **Petitioner,**

**v.**

**KRISTI NOEM**, Secretary of U.S.
DEPARTMENT OF HOMELAND
SECURITY, et al.,

                    **Respondents.**

_____/

**RESPONDENTS' OPPOSITION TO PETITIONER'S EXPEDITED**
**MOTION FOR PRELIMINARY INJUNCTION**

Respondents, by and through the undersigned Assistant United States Attorney, maintains

that Milka Auristela Ortega Cortez (Petitioner) Petitioner's Expedited Motion for Preliminary

Injunction (Motion) [D.E. 7] should be denied.

**I.      INTRODUCTION**

Plaintiff, Milka Auristela Ortega Cortez, requests that this Court grant preliminary

injunctive relief and enjoin Defendants' hold on decisions with respect to the following

applications: Form I-485 (Application to Register Permanent Residence or Adjust Status),

requesting adjustment of status as an asylee under 8 U.S.C. § 1159(b); Form I-765 (Application

for Employment Authorization), requesting employment authorization under 8 C.F.R. §

274a.12(c)(9); and Form I-131 (Application for Travel Documents, Parole Documents, and

Arrival/Departure Records), requesting Advance Parole under 8 U.S.C. 1182(d)(5)(A)

(collectively referred to as "Immigration Benefit Applications"). *See* [D.E. 7, ¶ 1].

At issue is U.S. Citizenship and Immigration Service's ("USCIS") recent adjudicative hold on the adjudication of pending applications for immigration benefits for individuals from certain countries. Specifically, on December 2, 2025, USCIS issued Policy Memorandum PM-602-0192, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries* ("December 2, 2025 Policy Memorandum"). *See* [D.E. 1-1]. The December 2, 2025 Policy Memorandum, in relevant part, placed a hold on adjudicating pending benefit requests for aliens from countries listed in Presidential Proclamation 10949, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and other National Security and Public Safety Threats*. *Id; see also* [Exhibit A].

The December 2, 2025 Policy Memorandum applies to this case, as Plaintiff, Milka Auristela Ortega Cortez, is a citizen and national of Venezuela, one of the 19 countries listed in Presidential Proclamation 10949. *Id*. The December 2, 2025 Policy Memorandum mandates "that all aliens meeting these criteria go through a thorough re-review process, including a potential interview and, if necessary, a re-interview, to fully assess all national security and public safety threats along with any other related grounds of inadmissibility or ineligibility. An individualized, case-by-case review and assessment will be done of all relevant information and facts." [D.E. 1-1].

On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries." ("January 1, 2026 Policy Memorandum"). *See* [D.E. 1-2]. The January 1, 2026, Policy Memorandum in relevant part, placed a hold on all pending benefit requests for aliens from countries listed in Presidential Proclamation 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect The Security of the United States. Id.* The January 1, 2026, Policy Memorandum also

applies to this case, as Plaintiff is a citizen and national of Venezuela, one of the 39 countries listed in Presidential Proclamation 10998.[1] This January 1, 2026 Policy Memorandum did not supersede the guidance in the December 2, 2025 Memorandum, except as specified under the "Exceptions to the Adjudication Hold." [D.E. 1-2, p. 2]. Plaintiff does not fit within the exceptions to the adjudication hold set out in the January 1, 2026 Policy Memorandum.

In sum, Plaintiff seeks injunctive relief pursuant to Federal Rule of Civil Procedure 65 and requests that the Court enjoin Defendants from applying a hold to Plaintiff's Immigration Benefits Applications with adjudication to occur within 30 days. [D.E. 7, p. 19].

## I.      ARGUMENT

### A.  Standard

In order to obtain the extraordinary remedy of a preliminary injunction, a plaintiff must prove: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Because a preliminary injunction is "an extraordinary and drastic remedy", it should not be granted unless the plaintiff "clearly carries the burden of persuasion as to the four prerequisites." *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985) (citation and internal quotations marks omitted).

### B.  Standing

As a preliminary matter, Plaintiff has failed to establish standing. The Eleventh Circuit described standing as a threshold jurisdictional question which requires courts to assess whether

---

[1] The USCIS hold does not preclude USCIS from conducting interviews on pending Form I-485s subject to the hold.  USCIS has scheduled an interview on Plaintiff's Form I-485 for April 14, 2016.

they have the power to entertain suit.  *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022). Therefore, in order to bring a claim in federal court, a plaintiff must establish standing under Article III's "case-or-controversy requirement." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Pursuant to this requirement, Plaintiff must show throughout the course of litigation: (1) an injury in fact; (2) fairly traceable to the challenged conduct; and (3) that is likely to be redressed by the relief requested.  *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). Here, the relief requested is that this Court order USCIS to adjudicate Plaintiff's immigration benefits application when the December 2, 2025 and January 1, 2026 Policy Memoranda prevent USCIS from adjudicating same. *See generally* [Exhibit A, D.E. 1-1].  The December 2, 2025, and January 1, 2026 Policy Memoranda were issued in response to a national security incident and constitute intervening facts that directly impact this litigation.

Because Plaintiff cannot prove redressability, the Court is without jurisdiction to order the relief sought under the current hold ordered by USCIS's Director at the behest of the President. As the Supreme Court explained in *Chaney*, the "recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." 470 U.S. 821, 831 (1985). So too here, the question of management of the lawful immigration system and protecting it from national security threats is committed to the political branches of government. *See Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001); *Mathews v. Eldridge*, 426 U.S. 67, 81 ("[a]ny rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution"), and is an area that the courts are not suited to review. *See Dep't of State v. Munoz*, 602 U.S. 899, 911 (2024) (noting that immigration is "an area unsuited to rigorous judicial oversight"); *Ameziane v.*

4

*Obama*, 699 F.3d 488, 494 (D.C. Cir. 2012) ("[i]t is not within the role of the courts to second-guess executive judgments made in furtherance of" acquiring and exercising expertise of protecting national security by the executive").

The Secretary of Homeland Security ("Secretary") is charged with carrying out the mission of the Department of Homeland Security ("DHS"). *See* 6 U.S.C. §§ 111(b) (mission of DHS), 112 (functions of the Secretary). The Secretary is also "charged with the administration and enforcement of [the Immigration and Nationality Act] and all other laws relating to the immigration and naturalization of aliens" and "shall . . . issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this Act." 8 U.S.C. §§ 1103(a)(1), (3). The Secretary's authority to manage the lawful immigration system is delegated to the Director of USCIS. DHS's Delegation to the Bureau of Citizenship and Immigration Services, Delegation No. 0150.1 (Jun. 5, 2003) (Delegation 0150.1), available at https://www.hsdl.org/c/view?docid=234775 (last accessed Feb. 20, 2026); *see also* 6 U.S.C. § 271 (establishing USCIS and its mission).

The Director is acting within the authority delegated to him from the Secretary to "issue such instructions" and "perform such other acts as he deems necessary", 8 U.S.C. § 1103(a)(3) (emphasis added), in order to fulfill the Congressional mandate to "reduce the vulnerability of the United States to terrorism . . . ". 6 U.S.C. § 111(b)(1)(B); *see also* Codification of Certain U.S. Citizenship and Immigration Services Law Enforcement Authorities, 90 Fed. Reg. 42797, 42798-800 (Sep. 5, 2025) (discussing USCIS's national security and public safety missions). Accordingly, the current hold on such adjudications is a discretionary action by the Executive Branch, and the Court lacks jurisdiction to compel any action to the contrary. As such, Plaintiff lacks standing because the redressability element cannot be satisfied.

### C.  Plaintiff Cannot Show a Substantial Likelihood of Success on the Merits

#### 1.  8 U.S.C. § 1252 strips this Court of Jurisdiction.

"Congress has sharply circumscribed judicial review of th[is] discretionary-relief process." *Patel v. Garland*, 596 U.S. 328, 333 (2022). at 332. Under 8 U.S.C. § 1252(a)(2)(B) (notwithstanding circumstances not at issue), "no court shall have jurisdiction to review –

> *any* other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the *discretion* of the Attorney General or the Secretary of Homeland Security[.]

*Id*. (emphasis added).  Though 8 U.S.C. § 1252(a)(2)(B)(ii) does not include the term "regarding" like section (B)(i), the use of the term "any other decision or action" encompasses not just "the granting of relief[,]" but also any decision or action "*relating to* the granting of relief." *Patel*, 596 U.S. at 339 (emphasis added); *see also Kucana v. Holder*, 558 U.S. 233, 246–47 (2010) (observing that (B)(i) enumerates administrative judgments that are "insulated from judicial view[,]" whereas (B)(ii) is a "catchall provision" covering "any other decision[,]" and that the "proximity of clauses (i) and (ii), and the words linking them—'any other decision'"—suggests that Congress had in mind decisions of the "same genre, *i.e.*, those made discretionary by legislation"). Thus, two elements trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar: (1) a decision or action by USCIS, including any decision or action relating to the granting of relief; and, (2) statutorily specified discretion under 8 U.S.C. §§ 1151–1381.

The scope of § 1252(a)(2)(B)(ii)'s jurisdiction-stripping extends beyond final decisions to foreclose district courts' jurisdiction to hear complaints regarding delays in adjudicating discretionary applications. In *Kanapuram v. Dir., US Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307 (11th Cir. 2025), the Eleventh Circuit held that § 1252(a)(2)(B)(ii) stripped district courts of jurisdiction over

APA challenges to USCIS's alleged delays in adjudicating adjustment-of-status applications. *Id.* at 1309. This was because it held that "§ 1255(a) grants the DHS and USCIS discretion as to the process and resolution of adjustment of status applications." *Id.*

Just like in the statute at 8 U.S.C. § 1255(a), Congress charged USCIS with discretion to adjust the status of applicants under 8 U.S.C. 1159(b), by stating:

> The Secretary of Homeland Security or the Attorney General, *in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe*, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who (1) applies for such adjustment, (2) has been physically present in the United States for at least one year after being granted asylum, (3) continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee, (4) is not firmly resettled in any foreign country, and (5) is admissible…

8 U.S.C. § 1159(b) (emphasis added).

Adjusting status or withholding adjustment under 1255(a), or under, as here, 1159(a) is therefore "within the discretion of USCIS," with no additional textual limitations on USCIS's discretion, including any deadline by which it must complete adjudication. *See*, *e.g.*, 8 C.F.R. § 103.2(b)(18) (permitting withholding of adjudication); *Zahani v. Neufeld*, 2006 WL 2246211, at *2 (M.D. Fla. June 26, 2006) ("it is clear that 8 C.F.R. § 103.2(b)(18) provides USCIS with discretion to withhold adjudication of the adjustment of status application" such that the Court "is without power to compel" USCIS "to adjudicate. The decisions *to adjudicate* or *to withhold adjudication* are decisions solely within the discretion of the USCIS officers identified in 8 C.F.R. § 103.2(18)") (emphasis in original).

USCIS, in its discretion, is conducting additional security checks on certain individuals applying for adjustment of status, including the Plaintiff. *See* PM-602-0192, at 1-3. Courts have consistently recognized that judicial intrusion into immigration matters is particularly

inappropriate when national security is at stake. *See Trump v. Hawaii*, 585 U.S. 667, 702 (2018);

*Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988). As one court explained:

> Although the Court is sympathetic to plaintiff's frustration with the lengthy delay in the application process, the determination that § 1252(a)(2)(B)(ii) precludes judicial review over plaintiff's claim is further supported by the general rule that courts should refrain from interfering with matters of immigration and national security. . . . USCIS has established numerous background and security checks that must be completed before an adjustment application is adjudicated. Interference by this Court, therefore, could have national security implications.

*Orlov v. Howard*, 523 F. Supp. 2d 30, 36 (D.D.C. 2007).  The adjudication hold for further security

screening that affect Plaintiff is the kind of discretionary decision that Congress has shielded from

judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii). The exact requirements imposed are

discretionary and not subject to review, and USCIS's decision to hold applications pending those

checks is an unreviewable judgment.

Furthermore, Congress has not imposed any statutory timeline for USCIS to adjudicate

adjustment of status applications. Where Congress intends to require timely adjudication, it says

so explicitly. *Compare* 8 U.S.C. § 1447(b) (providing that applicants for naturalization may seek

judicial review if USCIS fails to adjudicate within 120 days of examination). The absence of any

comparable provision for adjustment of status confirms that Congress intended to leave the timing

of such adjudications to the agency's discretion.

Similarly, the decision whether to grant Plaintiff's request for an advance parole document

is shielded from judicial review as a discretionary decision under § 1252(a)(2)(B)(ii).  8 U.S.C. §

1182(d)(5)(A) provides that "[t]he Attorney General may… in his discretion parole into the United

States temporarily under such conditions as he may prescribe only on a case-by-case basis for

urgent humanitarian reasons or significant public benefit any alien applying for admission . . . ."

This authority may be exercised to provide advance authorization to aliens who wish to travel or

return to the United States without a visa. 8 C.F.R. § 212.5(f).  Thus, the decision of whether to grant advance parole, as an extension of the general discretionary parole authority, is  shielded from judicial review as a discretionary decision under §  1252(a)(2)(B)(ii).  And, under § 1252(a)(2)(B)(ii).district courts do not have jurisdiction to hear challenges to the pace of USCIS's adjudication of discretionary benefits. *Kanapuram*, 131 F.4th at 1309.

Finally, as to employment authorization, Plaintiff is in fact authorized to work incident to her status.  See https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/70-evidence-of-employment-authorization-for-certain-categories/73-refugees-and-asylees; https://www.uscis.gov/humanitarian/refugees-and asylum/asylum#:~:text=(Some%20asylees%20choose%20to%20obtain,expiration%20date%20on%20your%20EAD.  However, the decision whether to grant Plaintiff's request for an employment authorization document under 8 C.F.R. §  274a.12(c)(9), for those with pending adjustment of status applications under 8 U.S.C. § 1255,[2] is shielded from judicial review as a discretionary decision under § 1252(a)(2)(B)(ii).

Regarding this request for employment authorization, the agency's regulatory discretion derives from the statutory framework. Congress provided that the Attorney General (now the Secretary) "may" authorize employment for aliens in various categories. *See* 8 U.S.C. § 1324a(h)(3) (defining "unauthorized alien" as one not "authorized to be so employed by this chapter or by the Attorney General"). By using permissive language and delegating implementation to regulation, Congress committed certain employment authorization decisions to agency discretion. Where Congress intended to expressly provide for employment authorization, rather than committing the decision to the Secretary's discretion, it has done so by statute. *See,*

---

[2] It is unclear why Plaintiff applied under 8 C.F.R. §  274a.12(c)(9), as she does not claim to have a pending adjustment of status application under 8 U.S.C. § 1255.

*e.g.*, 8 U.S.C. §§ 1184(c)(2)(E) (stating that the Secretary shall provide L-2 nonimmigrant spouses with employment authorization) and 1184(e)(2) (stating that the Secretary shall provide certain E nonimmigrant spouses with employment authorization). Employment authorization based on a pending Form I-485 adjustment of status application under 8. U.S.C. § 1255 is not expressly provided in statute but rather is an exercise of the Secretary's discretion consistent with her authority as recognized in 8 U.S.C. § 1324a(h)(3) and as reflected in 8 C.F.R. § 274a.12(c)(9) (providing that aliens with properly filed and pending adjustment applications under 8 U.S.C. 1255 may be granted employment authorization).

The governing regulation, consistent with the Secretary's discretionary authority to provide employment authorization, expressly provides that employment authorization decisions for applications based on an adjustment of status application are discretionary. Because the authority to grant or deny employment authorization under most categories, including the category Plaintiff applied under, "is specified under this subchapter to be in the discretion of" the Secretary, judicial review is barred. 8 U.S.C. § 1252(a)(2)(B)(ii).

Notably, PM-602-0194 expressly excepts certain employment authorization applications from the hold, including Form I-765 applications filed under categories (c)(8), limited (c)(11), and limited (c)(14). *See* PM-602-0194 at 4-5. This exception demonstrates that USCIS continues to exercise case-by-case discretion over employment authorization—deciding which categories are subject to enhanced review. Such discretionary line-drawing is precisely what § 1252(a)(2)(B)(ii) insulates from judicial review. The Secretary of Homeland Security's authority to grant work authorization under 8 C.F.R. § 274a.12(c)(9), for noncitizens under who have a pending adjustment of status application under 8 U.S.C. § 1255, is discretionary, and thus this Court lacks jurisdiction to compel the Secretary to adjudicate Plaintiff's request under 8 C.F.R. §

274a.12(c)(9).

### 2. Plaintiff will not be successful as to Count I: 28 U.S.C.§ 1361, Writ of Mandamus.

The Mandamus Act provides that district courts shall have original jurisdiction of any action to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff. 28 U.S.C. § 1361. Mandamus relief is appropriate when (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available. *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003). A writ of mandamus is an extraordinary remedy that is available when plaintiff has exhausted all other avenues of relief and only if the defendant owes a clear, non-discretionary duty. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). However, when the defendant has failed to perform a *discretionary* act, mandamus relief is unavailable to the plaintiff. *See Pittson Coal Group v. Sebben*, 488 U.S. 105, 121 (1988).

In Plaintiff's Count I to the Complaint, they direct this Court to 8 U.S.C. § 1571 stating that it is "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180-days". [DE 1, ¶ 66]. Specifically, § 1571 states that "[i]t is the sense of Congress that the processing of an immigration benefit application *should* be completed not later than 180 days after the initial filing of the application . . . . " 8 U.S.C. § 1571(b) (emphasis added). The Eleventh Circuit has held that "should" is "permissive, rather than mandatory, language." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008). Therefore, the "sense of Congress" language in 8 U.S.C. § 1571(b) is in no way binding on Defendants or this Court. *See, e.g.*, *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1285 (S.D. Fla. 2023) (discussing how Section 1571(b) does not plainly prescribe a duty to adjudicate a petition within a specific

11

timeframe and the statute's use of "should" is not "must"; therefore, Plaintiff failed to plead any right to mandamus relief or that Defendants owed a clear duty).

Because Plaintiff fails to establish the Mandamus Act provides an independent basis for jurisdiction, this claim should be dismissed under Rule 12(b)(1). *See Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 419 (11th Cir. 2009)(affirming district court conclusion that the Mandamus Act provides no basis for jurisdiction where the action complained of is discretionary); *Tetelain v. Jaddou,* no. 23-60742-CIV, 2023 WL 9787562, at \*3 (S.D. Fla. Nov. 27, 2023) ("Plaintiff, therefore, has no clearly defined right and Defendant has no clear duty to act within a certain timeframe. The first two requirements for mandamus jurisdiction are not present. The Court, therefore, lacks jurisdiction under the Mandamus Act to compel Defendant to act.").

Lastly, Plaintiff fails to establish that no other adequate remedy is available because they have brought forth an Administrative Procedure Act ("APA") claim in addition to requesting mandamus relief. *See Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011)("The availability of relief under the Administrative Procedure Act … forecloses a grant of writ of mandamus."). Therefore, the Court lacks subject matter jurisdiction over Plaintiffs' mandamus claim because there is no clear, non-discretionary duty to adjudicate the pending Immigration Benefit Applications within a designated timeframe.

### 3. *Plaintiff is unlikely to succeed on Count II: Administrative Procedure Act, 5 U.S.C. § 555(b), § 706(1), et. seq.*

The withholding of adjudication as to Plaintiff's Immigration Benefit Applications is lawful as it does not preclude an applicant's eligibility for relief, but simply involves a more rigorous vetting of applicants from high-risk countries to ensure national security. Similarly, Plaintiff's unreasonable delay claim fails because absent the hold, the amount of time the Immigration Benefit Applications have been pending is not unreasonable. To proceed on a claim

of unreasonable delay, a plaintiff must assert that an agency has failed to take a discrete action that it is required to take. *See Norton v. S. Utah Wilderness All.* 542 U.S. 55, 64 (2004). However, APA review is unavailable when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

The APA merely provides the standards for reviewing agency action once jurisdiction is otherwise established. *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 282 (9th Cir. 1988). If the Court finds jurisdiction under another provision, judicial review under the APA "is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge the agency's use of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "If no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Id*. No statutory or regulatory provisions provide a "meaningful standard" to review how long it should take to adjudicate the Immigration Benefit Applications at issue in this matter. Because there is no statute or regulation providing a timeframe for completion of the adjudication process (as it relates to the pending Forms I-485, I-765 and I-131), there is no standard against which the Court can measure whether the agency has acted "within a reasonable time" or "unreasonably delayed adjudication." 5 U.S.C. § 555(b); 5 U.S.C. § 706(1).

Assuming arguendo Plaintiff had been able to show an unreasonable delay, Plaintiff still has not alleged sufficient prejudice to state a claim under 5 U.S.C. § 706. The Complaint alleges that Plaintiff has been significantly harmed by the hold of adjudication as to their Immigration Benefit Applications. *See* [D.E. 7, ¶ 68]. Plaintiff alleges without employment authorization documents or a green card, her life would be disrupted, and she would face significant obstacles in planning for he future. *Id.* at ¶ 69. Plaintiff also states without a green card or advance parole,

they are unable to engage in temporary travel outside of the United States. *Id.* Indeed, "uncertainty and the ability to move forward with the normal course of life are inherent risks of engaging in the immigration process." *Osechas Lopez*, No. 2023 WL 152640, at * 3.

Plaintiff also asks this Court to apply the six-factor balancing test as set forth in *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 80 (D.C. Cir. 1984) (hereinafter referred to as "*TRAC*"), in order to determine whether agency delay was unreasonable. The *TRAC* factors are as follows:

(1) the time agencies take to make decisions must be governed by a rule of reason;
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Defendants do not agree that a TRAC factor analysis is appropriate at this stage because the issue is no longer about whether any delay is unreasonable given mutually exclusive agency duties competing for limited resources. Nonetheless, Defendants will briefly address each factor. The first and second *TRAC* factors are typically examined together, but of the two factors, the first—whether a 'rule of reason' guides the agency — is the most important." *Osechas Lopez*, 649 F. Supp. 3d at 1288(internal citations omitted).

While Plaintiff argues the Policy Memoranda create an indefinite suspension, on the face of the memoranda, the contrary is suggested. The December 2, 2025 Policy Memorandum states that within "90 days of issuance of this memorandum, USCIS will prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate,

and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, issue operational guidance." [D.E. 1-1, p. 4]. Similarly, The January 1, 2026 Policy Memorandum also references this 90-day period. [D.E. 1-2, p. 5]. The national security incidents giving rise to the hold cannot be disputed and constitute a rational basis for additional vetting to be conducted when reviewing pending immigration benefit applications. The first *TRAC* factor favors Defendants as a rule of reason has been applied for which Plaintiff has not established to be unreasonable.

The second *TRAC* factor requires courts to look at whether Congress provided a timetable. *TRAC*, 750 F.2d at 80. Plaintiff's reliance on the 180-day timeline referenced in 8 U.S.C. § 1571 [D.E. 7, p. 9] as to the adjudication of immigration benefit applications is merely aspirational, which is discussed in Section C1 of this response. Considering the hold is not indefinite, and the 180-day timeline is not mandatory, the second *TRAC* factor weighs in Defendants' favor.

The third and fifth *TRAC* factors are related and together examine "'the nature and extent of the interests prejudiced by the delay,' including whether 'human health and welfare' might be implicated." *TRAC*, 750 F.2d at 80. "Welfare generally involves a significant risk of material impairment where there is current and actual danger to the health of the individual and the health of their progeny." *Khushnood v. U.S. Citizenship & Immigr. Servs.*, No. 21-2166 (FYP), 2022 WL 407152, at *4 (D.D.C. Feb. 10, 2022) (cleaned up). Plaintiff argues that without employment authorization or lawful permanent residency they face the loss of health insurance; exhaustion of savings due to no income; inability to secure employment; denied access to higher education; lack of issuance/renewal of driver's licenses, and prohibition against traveling which would allow them to see relatives. [D.E 1, p. 16]. Much of Plaintiff's alleged injuries are economic in nature, which

15

is insufficient to weigh in favor of finding unreasonable delay. *See Nascimento v. U.S. Dep't of Homeland Sec.*, 689 F. Supp. 3d 1245, 1250 (S.D. Fla. Aug. 30, 2023)(internal citations omitted).

The fourth *TRAC* factor – "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80 – strongly favors Defendants. This factor has also been found to be dispositive in denying relief. *See, e.g.*, *Echeverri v. United States Citizenship & Immigr. Servs.,* No. 23-CV-21711-RAR, 2023 WL 5350810, at *7 (S.D. Fla. Aug. 21, 2023). Plaintiff is not in the position to determine the management of a lawful immigration system and protecting it from national security threats whereas that is a task committed to the political branches of government. *See Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001); *Mathews v. Eldridge*, 426 U.S. 67, 81.

With respect to the sixth *TRAC* factor, Plaintiff alleges impropriety or bad faith by the agency. *See TRAC*, 750 F.2d at 80 (cleaned up). Plaintiff references the Department of Homeland Security's post on December 31, 2025 via social media platform "X" as romanticizing the idea of 100 million deportations. [D.E. 7, p. 10]. However, Plaintiff's highlighting of an isolated post does not undermine that USCIS applies a reasoned approach to adjudicating the immigration benefit applications at issue, generally in the order received, and applying comprehensive reviews to applicants impacted by the Policy Memoranda.

In balancing the *TRAC* factors, it can be concluded that there has not been unreasonable delay in the adjudication of Plaintiff's Immigration Benefit Applications.

### 4. *Plaintiff is unlikely to succeed on Count III: Agency Action that is Arbitrary, Capricious, and Abuse of Discretion, or otherwise not in Accordance with Law, 5 U.S.C. § 706(2)(A).*

In Count III of the Complaint, Plaintiff relies upon *Pacito v. Trump*, 768, F. Supp 3d 1199 (W.D. Wash. 2025) for the proposition that Defendants' decision to withhold adjudication is arbitrary and capricious. [D.E. 1 at pp. 22-23].

16

At issue in *Pacito* was the President's temporary suspension regarding the admission of refugees pending a determination that further entry into the United States of refugees aligns with the interests of the United States. Exec. Order No. 14163, *Realigning the United States Refugee Admissions Program*, 90 Fed. Reg. 8,459 (Jan. 20, 2025) §§ 1, 4. The President also issued a 90-day pause in foreign development assistance to assess programmatic efficiencies, and to ensure that all foreign aid is consistent with foreign policy. *See* Exec. Order No. 14,169, *Reevaluating and Realigning United States Foreign Aid*, 90 Fed. Reg. 8,610 (Jan. 20, 2025) §§ 2, 3. In turn, foreign aid related to the United States Refugee Admissions Program was paused. Ultimately, the district court issued a preliminary injunction in favor of Plaintiffs on February 28, 2025, thereby prohibiting enforcement of Executive Order 14163. *Id.* at 1210. The government has appealed the district court's preliminary injunction which is now pending before the Ninth Circuit. *Pacito et al. v. Trump et al.*, No. 25-cv-00255-JNW, DE 46. On September 12, 2025, the Ninth Circuit issued a preliminary ruling staying the district court's injunction in its entirety except as otherwise noted. *Pacito et al. v. Trump et al.*, No. 25-1313 (9th Cir.), DE 149, p. 8. The order also explained in part that the government is likely to prevail on plaintiffs' challenge to the validity of Executive Order No. 14163's suspension of refugee admissions due to the authority vested by § 1182(f). *See id.* at 11-12. A full opinion remains forthcoming from the Ninth Circuit.

First, the *Pacito* case does not address the Policy Memoranda discussed here. Nevertheless, central to the *Pacito* case, is the executive authority given to the President pursuant to 8 U.S.C. § 1182(f), in suspending or restricting the entry of aliens. Here, the President exercised such authority through Presidential Proclamations 10949 and 10998 when imposing restrictions, limitations, and exceptions on the entry of aliens deemed detrimental to U.S. interests. Numerous Presidents have invoked § 1182(f) to suspend or impose restrictions on the entry of certain aliens

or classes of aliens[3], and the Supreme Court has repeatedly upheld the broad and virtually unreviewable sweep of this authority. *See, e.g., Hawaii*, 585 U.S. at 684 (explaining that the "sole prerequisite set forth in § 1182(f) is that the President 'find []' that entry of the covered aliens 'would be detrimental to the interests of the United States.'").

> ### 5. *Plaintiff is unlikely to Succeed on Count 4: Agency Action without Observance of Procedure Required by Law in Violation of 5 U.S.C. 706(2)(D) and Count 7: Ultra Vires.*

The Court may set aside an agency action only if the Court finds that challenged action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A), (C). Plaintiff argues that Defendants acted unlawfully without allowing for notice-and-comment under the APA and the Policy Memoranda are ultra vires. [D.E. 1, ¶¶ 108, 127]. The President was not required to engage in notice-and-comment rulemaking, as he has broad authority under the Constitution and the INA to suspend and impose restrictions on the entry of aliens, which was then delegated to the agencies to implement. *See Hawaii*, 585 U.S. at 683-84. Further, the decision behind the Policy memoranda to place a hold on adjudication is procedural, in nature, and not substantive, hence falling within the exceptions to the notice and comment period. *See* 5 U.S.C.§553(b)(3)(A) (stating that APA rulemaking does not apply … to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.").

Plaintiff calls upon this Court to apply the *Pacito* analysis here by finding the Policy Memoranda ultra vires and not permitted under INA § 212(f), 8 U.S.C. §1182(f). *See* [D.E. 1, ¶

---

[3] *See, e.g.*, Presidential Proclamation No. 5517, 51 Fed. Reg. 30470 (Aug. 22, 1986)(President Reagan); Exec. Order No. 12,807, 57 Fed. Reg. 23133 (May 24, 1992)(President H.W. Bush); Presidential Proclamation No. 6958, 61 Fed. Reg. 60007 (Nov. 22, 1996)(President Clinton); Presidential Proclamation No. 8342, 74 Fed. Reg. 4093 (Jan. 21, 2009)(President W. Bush); Presidential Proclamation No. 8693, 76 Fed. Reg. 44751 (July 24, 2011)(President Obama).

127]. As discussed above, the Ninth Circuit has already issued a preliminary ruling in *Pacito* stating that the government will likely prevail on the validity of the Executive Order issued consistent with the authority permitted under § 1182(f). Thus, Plaintiff's reliance on the district court decision in the *Pacito* case is misplaced and Defendants have not exceeded statutory authority.

> 6. *Plaintiff is unlikely to succeed on Count 5: Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A) and Count 6: Equal Protection, Fifth Amendment of the U.S. Constitution.*

Plaintiff argues that she have a right to be free from discrimination based on her ethnicity and national origin pursuant to 8 U.S.C. §1152(a)(1)(A). *See* 8 U.S.C. § 1152(a)(1)(A) ("[N]o person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."); *see also* [D.E. 1, ¶ 115]. Plaintiff also contends the Policy Memoranda discriminate based on national origin – a suspect classification and is not narrowly tailored to serve a compelling governmental interest, hence violating the equal protection component of the Fifth Amendment. [D.E. 1, ¶ 116].   Again, the Policy Memoranda simply creates a vetting process for those individuals from high-risk countries. There is nothing to suggest from the Policy Memoranda that a denial of any immigration benefit should be expected because of an individual's national origin. The fact there are exceptions to the adjudication hold, although not applicable to Plaintiff's case, further supports this point.

### D. Plaintiff Cannot Show Irreparable Injury will be Suffered unless the Injunction Issues.

Plaintiff alleges that she will suffer irreparable injury because without employment authorization or lawful permanent residency, the impacts are both personally and professionally disruptive as discussed in Section C2 of this response. However, irreparable injury must be *likely*

19

in the absence of an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)(emphasis in original). Plaintiff has not satisfied this requirement. Even if the USCIS hold was lifted today, there is no guarantee that Plaintiff's applications would be adjudicated in time to avoid what is an inherent risk of the immigration process – uncertainty as to the ability to move forward with life.

### E. Plaintiff Cannot Show Threatened Injury Outweighs Whatever Damages the Proposed Injunction May Cause the Opposing Party.

The threatened injury to Plaintiff does not outweigh the damage the injunction would cause Defendants. An injunction prevents Defendants from thoroughly investigating applicants, including Plaintiff, for the purposes of ensuring national security and public safety. As a general matter, the Supreme Court has stressed that the government "need[s] . . . flexibility in policy choices rather than the rigidity often characteristic of constitutional adjudication" when it comes to immigration regulation. *Mathews*, 426 U.S. at 81.

### F.  If issued, the Injunction would be Adverse to the Public Interest.

Finally, the balance of harms and the public interest elements of the injunctive relief test merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). Here, entry of a preliminary injunction order would run counter to the broader purpose of the policy memoranda, which is to ensure screening and vetting prioritize the safety of the American people. [DE 1-1, p. 2].

## II.    CONCLUSION

Based upon the foregoing, Plaintiff's Expedited Motion for Preliminary Injunction [D.E. 7]  should be denied and the case dismissed in its entirety.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**United States Attorney**

By: **/s/ Kelsi R. Romero**
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
Special Bar No. A5502758
500 East Broward Blvd.
Suite 700
Fort Lauderdale, Florida 33394
Tel.: (954) 660-5694
E-mail: Kelsi.Romero@usdoj.gov
*Counsel for United States*

21