UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MILKA AURISTELA ORTEGA CORTEZ, an individual

                Plaintiff,

vs.

JOSEPH B. EDLOW, Director of U.S. Citizenship and Immigration Services; KRISTI NOEM, Secretary of U.S. Department of Homeland Security, U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, Attorney General of the United States; and JASON A. REDING QUIÑONES, United States Attorney for the Southern District of Florida
                Defendants.

Case No.: 1:26-cv-20813-JB

**PLAINTIFF'S REPLY IN SUPPORT OF EXPEDITED MOTION FOR PRELIMINARY INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Milka Auristela Ortega Cortez ("Plaintiff"), by and through her undersigned *pro bono* counsel, hereby files her Reply in Support of Plaintiff's *Expedited* Motion for Preliminary Injunction (the "Motion") [ECF No. 7].

## ARGUMENT

### A. The Court has Jurisdiction

Defendants cite to 8 U.S.C. § 1252(a)(2)(B) for the unlimited proposition that no jurisdiction exists at all for review of any part of the adjustment of status application process for applicants legally within the United States. That is a legal fiction. The jurisdictional bar against reviewing discretion for relief from removal found in 8 U.S.C. § 1252 does not apply to this case. The title of 8 U.S.C. § 1252 is "Judicial review of orders of removal," and the subheader for (a)(2)(B) is "Denials of discretionary relief." Since the Court's jurisdiction here is not about discretion over relief from removal as in 8 U.S.C. § 1252, the Court's authority to review and "compel agency action unlawfully withheld or unreasonably delayed" is uninterrupted. *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131 (D. Ariz. 2008). Under the APA, if USCIS has unreasonably

delayed or unlawfully withheld adjudication of Plaintiff's applications, the APA provides Plaintiff with a clear right to relief.  *Id.*  Plaintiff is not defending against removal and has not received removal orders,[1] and Plaintiff has not received a denial on her adjustment of status application. Plaintiff moved for injunctive relief on unresolved adjustments of status, employment authorization, and advance parole, not relief from removal in immigration court.  Plaintiff is not asking the Court to intervene in future immigration enforcement, only to exercise jurisdiction to review the Defendants' present unlawful actions.

The text of 8 U.S.C. § 1252(a)(2)(B)(i) specifically states there is no jurisdiction for a court to review "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title" by Defendants. There is no judgment, let alone a judgment under those sections, denying Plaintiff's relief from removal at issue here to strip the Court of jurisdiction. Rather, Plaintiff brought this suit because she has not received a decision on her applications, and cannot receive decisions because of the Policy Memorandum. The absence of an agency opinion or determination on eligibility for adjustment of status is not a judgment.  *See Patel v. Garland*, 596 U.S. 328, 337 (2022) (agreeing with amicus' definition of "judgment" as "any authoritative decision," "a formal utterance or pronouncing of an authoritative opinion after judging," or "an opinion so pronounced," and "[t]he pronouncing of a deliberate opinion upon a person or thing, or the opinion pronounced.") (citing Webster's Third New International Dictionary 1223 (1993) and 8 Oxford English Dictionary 294 (2d ed. 1989)). Defendants may contend that agency logistical decision-making about USCIS resources and staffing for adjustment of status procedures qualifies as an exercise of judgment, but that the colloquial meaning of the word "judgment" does not rise to the legal sense of the term deployed in 8 U.S.C. § 1252(a)(2)(B)(i). Since Plaintiff is not challenging discretionary denials of adjustment of status applications that would relieve her from removal orders, 8 U.S.C. § 1252 means nothing for the APA's strong presumption in favor of judicial review.

*Patel v. Garland* is of no help to Defendants, because the majority opinion strengthens Plaintiff's position that §1252, and its bar to judicial review of discretionary relief from deportation, only applies with the underlying context of removal proceedings. 596 U.S. 328, 345 (2022) (responding to concerns about the "unintended consequence of precluding all review of

---

[1] To the contrary, Plaintiff was granted asylum by an Immigration Judge in removal proceedings thereby closing said removal proceedings.

USCIS denials of discretionary relief" by stating "[t]hose decisions are made outside of the removal context" and "[t]he reviewability of such decisions is not before us, and we do not decide it."). In *Patel*, not only was the foreign national seeking relief from deportation via status adjustment already in immigration court, undergoing removal proceedings, but his original adjustment of status application that began the entire controversy in *Patel* over factual and legal determinations had been denied several years earlier. 596 U.S. at 334.

Plaintiff is not asking for review of "any factual findings or decisions that are made during Plaintiff's I-485 decisions, since the Policy Memorandum put an indefinite hold on immigration benefits from all individuals from Venezuela. Policy Memorandum, ECF No. 1-1 at 2. The Policy Memorandum is not a factual finding or decision that was made about Plaintiff's particular I-485, I-765, or I-131 applications. And the kind of predicate factual determinations protected by the discretion upheld in *Patel*, like whether or not a driver's license question about citizenship was marked unintentionally, has nothing to do with **the egregious pace** Defendants took in unreasonably delaying adjudication of Plaintiff's applications even prior to the Policy Memorandum's blanket hold.

All of the rationale above for why 8 U.S.C. § 1252(a)(2)(B)(i) is irrelevant to Plaintiff applies to § 1252(a)(2)(B)(ii). Where (ii) shields "any other decision or action…the authority for which is specified under this subchapter to be in the discretion" of the Defendants, it does so within the confines of that subchapter, not the entire immigration code. 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(a)(2)(B)(ii) removes jurisdiction only over acts "the authority for which is specified under [8 U.S.C. §§ 1151-1378] to be in the discretion of" the Defendants, and courts must construe this provision narrowly. *Hong Wang v. Chertoff,* 550 F. Supp. 2d 1253, 1256 (W.D. Wash. 2008) (substitution in original). "Neither § 1255(a) nor any other statute provides the 'specified' discretionary authority over the pace of adjudicating applications for adjustment of status that § 1252(a)(2)(B)(ii) demands." *Id.* (citing *Spencer Enters. v. United States*, 345 F.3d 683, 690 (9th Cir. 2008)).

Defendants attempt to extrapolate the holding in *Patel* with §1252(a)(2)(B)(ii) to contend that the Court is stripped of all jurisdiction over any of Defendants' decisions, insulating them completely from judicial review by citation to *Zia v. Garland* 112 F. 4th 1194 (9th Cir. 2024).

Even if the ultimate decision to grant or deny adjustment of status may be discretionary, USCIS nonetheless has a nondiscretionary duty to adjudicate applications and to do so within a

3

reasonable time. *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1138 (D. Ariz. 2008) ("these courts have held that the pace at which USCIS processes I-485 applications is nondiscretionary and that § 1252(a)(2)(B)(ii) does not bar judicial review") (collecting cases).

Defendants discuss the Eleventh Circuit decision in *Kanapuram*[2] (Response at page 6) that deals with a separate legal issue: visa retrogression and long-standing USCIS policy to withhold I-485 adjudications until an immigrant visa number is actually available for the applicant. Defendants do not explain how the present case is functionally indistinguishable from a visa retrogression cases. The two scenarios are drastically different.

Visa retrogression, unlike the Policy Memorandum, is consistent with the statutory framework governing the allocation of immigrant visas. Specifically, the Immigration and Nationality Act ("INA") permits the State Department to calculate visa availability, and make reasonable estimates of the anticipated number of visas to be issued and to rely on such estimates in authorizing visa issuance. *Babaria v. Jaddou*, 87 F.4th 963, 971 (9th Cir. 2023). Retrogression occurs when the demand for visas exceeds the available supply, requiring the State Department to adjust the "final action dates" in the Visa Bulletin[3] to ensure compliance with statutory numerical limits. *Id*. at 974.

This is not that. The INA does not permit the Defendants to suspend benefit decisions. Plaintiff here is not waiting for a visa number, and there has not been a visa retrogression that impacts her eligibility for adjustment of status. In fact, asylees like Plaintiff, do not have to wait for immigrant visa numbers to become available to apply for lawful permanent residency. *See* https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-asylees (last accessed on Mar. 3, 2026); 8 C.F.R. § 209.2. Asylees are eligible to adjust their status one year after being granted asylum, as they are not subject to the same numerical limitations as other immigration categories. *Id.* Further, the policy withholding adjustment until a visa number is available is predictable and constrained, because visa numbers continue to process and subsequently result in

---

[2] *Kanapuram v. Dir., US Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307 (11th Cir. 2025).

[3] The Visa Bulletin is a monthly report published by the U.S. Department of State that provides information on the availability of immigrant visas in various preference categories and for different countries of chargeability. It serves as a guide for issuing visas at U.S. consulates and embassies and is also used by the USCIS to determine whether an I-485 may be accepted for filing and adjudication. 3 Immigration Law and Procedure § 39.01 (2026).

issued visas or approved adjustments of status, and the policy does not discriminate against applicants on the basis of their nationality. Anyone, regardless of country of origin, is subject to the requirement that a visa number be ready in order for USCIS to adjudicate an adjustment of status. The Policy Memorandum, on the other hand, is indefinite, unpredictable, applies only to certain nationalities, and is not supported by a congressional construct like the number of visas issued fixed by statute.

Additional cases contradict Defendants' misinterpretation of §1252. The D.C. Circuit, Fourth Circuit, and Seventh Circuit have held §1255 applied only where a Form I-485 adjustment of status application was already denied. See *Abuzeid v. Mayorkas,* 62 F.4th 578, 580 (D.C. Cir. 2023) (USCIS "determined that he was ineligible for adjustment of status and denied his applications"); *Lee v. USCIS,* 592 F.3d 612, 613 (4th Cir. 2010) (denying the application because Lee was "precluded from filing for an adjustment of status"); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1025 (7th Cir. 2023) ("USCIS denied his application"). In another case, *Iddir v. INS*, 301 F.3d 492, 497-98 (7th Cir. 2002), §1252 was read to "only bar[] review of actual discretionary decisions, not the failure to render a decision."

District courts across the country that have analyzed the applicability of §1252 in a factual context analogous to Plaintiff find that it "does not bar judicial review of the pace of application processing." *Liu v. Novak*, 509 F. Supp. 2d 1, 5 (D.D.C. 2007) (agreeing with other district courts holding §1252 "does not bar judicial review of the pace of application processing or the failure to take action") (referencing *Duan v. Zamberry*, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. Feb. 23, 2007); *Batista v. INS*, 2000 U.S. Dist. LEXIS 1647, at *2 (S.D.N.Y. Feb. 22, 2000); *Elmalky v. Upchurch*, 2007 U.S. Dist. LEXIS 22353, at *5 (N.D. Tex. Mar. 28, 2007); *Dae Hyun Kim v. Ashcroft*, 340 F. Supp. 2d 384, 389 (S.D.N.Y. 2004)). In *Liu*, the plaintiff was also challenging the lack of a decision on an adjustment of status application with mandamus and APA claims. 509 F. Supp. 2d, at 6 (summarizing that plaintiff is "challenging the absence of a decision or action, specifically the failure to adjudicate his application. Review over the lack of action is not barred.") (citing *Nyaga v. Ashcroft*, 186 F. Supp. 2d 1244, 1252 (N.D. Ga. 2002)). Following *Liu*, another case persuasively articulated that §1252 "does not specify that USCIS shall have discretion to decide whether and when to adjudicate applications for adjustment of status." *Geneme v. Holder*, 935 F. Supp. 2d 184, 192 (D.D.C. 2013) (retaining jurisdiction over plaintiff's claim). Similarly, the "discretionary authority to adjudicate the plaintiff's adjustment of status" has been deemed

distinct from "the discretionary authority to withhold a decision indefinitely." *Beshir v. Holder*, 853 F. Supp. 2d 1, 8 (D.D.C. 2011) (pointing to *Bondarenko v. Chertoff*, 2007 U.S. Dist. LEXIS 67143, at *4 (W.D.N.Y. Sept. 11, 2007) and *Al Kurdy v. U.S. Citizenship Immigration Servs.*, 2008 U.S. Dist. LEXIS 5730, at *4 (D. Neb. Jan. 10, 2008)). The *Beshir* court further rejected the INA as a source of "authority to hold the plaintiff's application in abeyance indefinitely." (concluding "jurisdiction is not barred by the INA's jurisdiction-stripping provision"). 853 F. Supp. 2d at 8-9.

Finally, if the Court still finds ambiguity in the text of 8 U.S.C. § 1252 and narrow judicial interpretations of it, statutory ambiguities in immigration law are resolved in favor of immigrants. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). This view has recently been confirmed in broader context by the Supreme Court. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 369 (2024) ("courts may not defer to an agency interpretation of the law simply because a statute is ambiguous…"). The jurisdiction-stripping power of §1252 does not overcome the APA's grant of judicial review because the Defendants have not passed judgment on the applications by denying Plaintiff's adjustment of status, advance parole or employment authorization, and Plaintiff is not seeking relief from removal or challenging a denied adjustment of status as a form of discretionary relief as part of removal proceedings.

Defendants then try to find shelter in the language of 8 U.S.C. § 1255(a) for "broad discretion upon the Secretary to determine not only *whether* to grant adjustment of status, but also *how* and *when* to adjudicate such applications." (emphasis in original). Defendants forget that §1255 is not the only source of their responsibility to adjudicate adjustments of status "under such regulations as he may prescribe." 8 U.S.C. § 1255(a). Defendants are violating the prescribed regulations for the mandatory adjudication process that leads to approval of adjustment of status. 8 C.F.R. § 245.6 requires that every adjustment of status applicant "shall be interviewed[4] by an immigration officer." 8 C.F.R. § 245.2(a)(5)(i) says that when a decision is reached on adjustment of status, the applicant "shall be notified of the decision" and the reasons for denial if the application was not approved. This regulation creates a mandatory duty that serves as a basis for APA action. *Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253 (W.D. Wash. 2008). There is no ground between the requirement to interview an applicant, and notify the applicant of a decision on their application, for USCIS to indefinitely postpone determining up or down the applicant's

---

[4] Here, Plaintiff was interviewed on November 26, 2025 at the USCIS District Office in Miami, Florida.

eligibility for adjustment of status and hold an application in abeyance forever. USCIS's Policy Memorandum does not replace these regulations because the agency did not promulgate its policy holding immigration benefits for Venezuelans as an APA-compliant regulation with notice-and-comment rulemaking procedures.

As predicted, Defendants also rely on 8 C.F.R. § 103.2(b)(18) as insulation for their purported discretion. Plaintiff reaffirms their argument, rebutting that regulation, because Defendants have not followed the procedures required to justify a universal hold on Plaintiff's immigration benefits—no "investigation" has been "undertaken" relating to Plaintiff's eligibility, given the Policy Memorandum immediately froze all covered applications. 8 C.F.R. § 103.2(b)(18). The Policy Memorandum itself neither cites to 8 C.F.R. § 103.2(b)(18), nor describes an investigation that USCIS has already undertaken pursuant to that regulation. B.

### B. Plaintiff Has Standing

Defendants argue that Plaintiff lacks standing because she cannot prove redressability. This argument is fatally flawed because the Court has jurisdiction to compel Defendants to make a decision if that decision is unlawfully withheld. 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). A plaintiff can proceed under section 706(1) only where she "asserts that an agency failed to take discrete agency action that is required to take." *Norton*, 542 at 64.

The hold on adjudication is not committed to unreviewable agency discretion. While the Secretary has broad authority to manage the lawful immigration system, that authority does not extend to indefinitely withholding decisions on pending applications without statutory authorization. The regulation at 8 C.F.R. § 103.2(b)(18) imposes a non-discretionary duty with a framework for both the timing and manner of withholding adjudication. Absent compliance with that regulation's specific procedural requirements, judicial review is not precluded.

Plaintiff has sufficiently proved redressability because, if the Court orders Defendants to adjudicate her applications, Defendants must comply with that order. The fact that Defendants have adopted a policy of withholding adjudication does not render that policy unreviewable or make Plaintiff's injury unredressable.

### C. Plaintiff Showed Substantial Likelihood of Success on the Merits

*1. Plaintiff has established a substantial likelihood of success as to Counts I and II.*

The Court's subject matter was established by the APA and Mandamus Act claims alleged in the Amended Complaint. Defendants misunderstand the distinction between challenging a

discretionary, substantive decision and challenging delays, withholding, and unlawful policies abdicating adjudication.

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Petitioner." 28 U.S.C. § 1361. "Mandamus is proper if (1) the Petitioners can show a clear right to the relief sought; (2) the Respondents have a clear, non-discretionary duty to act; and (3) no other remedy is available." *Nyaga v. Ashcroft*, 323 F.3d 906, 911 (11th Cir. 2003) (citing *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)).

"Contrary to the Respondents' assertions, district courts possess mandamus jurisdiction over petitions to compel the Department of Homeland Security to adjudicate adjustment of status applications within a reasonable time period." *Tjin-A-Tam v. U.S. Dept. of Homeland Sec.*, No. 05-23339-CIV, 2007 WL 781339, at *3 (S.D. Fla. Mar. 12, 2007); *see also lkhatib v. Butler,* 2005 U.S. Dist. LEXIS 22858, No. 04-22407 (S.D. Fla. June 6, 2005). "According to *Yu v. Brown,* all the courts addressing this question have held that [US]CIS **has a non-discretionary duty** **to process applications** for legal permanent resident status, as well as all other immigration applications". *Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1204 (M.D. Fla. 2007) (emphasis added) (citing *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999)). "A duty to *adjudicate* would necessarily include a duty to *act* on an application." *Id.* (emphasis in original).

In addition, under the APA, courts may compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706. Accordingly, this Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because of the applicability of the Mandamus Act and the APA to Plaintiff's Complaint.

Defendants do not contest that Forms I-765, I-131, and I-485 are well beyond USCIS's median processing times. Instead, Defendants rely on *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008) for the proposition that "[t]he Eleventh Circuit has del that 'should' is 'permissible, rather than mandatory language'" when referring to the 180-day timetable that Congress set forth in 8 U.S.C. § 1571. However, the *Lambert* decision had nothing to do with a lawsuit under the APA or the Mandamus Act; rather, that case dealt with the adjudication of a motion to compel arbitration in an alleged age and race discrimination case brought by a former employee against an employer. *Id.* Defendants also cite to *Osechas Lopez v. Mayorkas*, 649 F.

8

Supp. 3d 1278, 1285 (S.D. Fla. 2023)[5] for the same proposition, but that decision also incorrectly cites the *Lambert* decision, which has nothing to do with the claims at issue in this case.

Furthermore, Defendants' reliance in *Tetelain v. Jaddou*, No. 23-60742-CIV, 2023 WL 9787562, at *3 (S.D. Fla. Nov. 27, 2023) is equally misplaced because that case dealt with waiver petitions filed pursuant to Form I-601 and "Congress specifically stripped the courts of jurisdiction over the Attorney General's consideration of waiver applications: 'No court shall have jurisdiction to review a decision **or action** by the Attorney General regarding a waiver under this clause.' 8 U.S.C. § 1182(a)(9)(B)(v)." *Tetelain v. Jaddou*, No. 23-60742-CIV, 2023 WL 9787562, at *4 (S.D. Fla. Nov. 27, 2023) (emphasis added). The *Tetelain* court concluded that the pace of decisions is well within the definition of "action" by the agency. *Id.*

Finally, nothing in the Immigration and Nationality Act ("INA") authorizes USCIS to suspend adjudications *en masse*, to replace individualized assessments with nationality-based review, or to convert the President's authority under 8 U.S.C. § 1182(f) over t**he entry of foreign nationals to the United States** into a *wholesale domestic adjudication moratorium*. The INA assigns USCIS mandatory adjudicatory duties and expressly prohibits, through 8 U.S.C. § 1152(a)(1)(A), nationality-based discrimination in the allocation of immigration benefits.

In *ZAHRA SHOKRI VARNIAB, et al., Plaintiffs, v. JOSEPH B. EDLOW, et al., Defendants.*, No. 25-CV-10602-SVK, 2026 WL 485490, at *11 (N.D. Cal. Feb. 20, 2026) (a full copy of the decision has been filed here as ECF No. 22), the Court held that:

> Under section 706(1) of the APA, a plaintiff must identify a "*discrete* agency action" that the agency is legally "*required* to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). As discussed in greater detail in section II.B. above, 8 U.S.C. § 1255(a) provides that the status of certain aliens "may be adjusted by the Attorney General, in [her] discretion and under such regulations as [she] may prescribe, to that of an alien lawfully admitted for permanent residence" if the alien applies for such adjustment and other requirements are satisfied. The regulations concerning adjustment of status require that the applicant "be notified of the decision" on his or her application for adjustment of status "and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i). Courts have concluded that this regulation establishes a "mandatory duty to act" on Form I-485 applications for adjustment of status. *See Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007); *Wang*, 550 F. Supp. 2d at 1258.

---

[5] Defendants also miscited the decision as being issued by the Eleventh Circuit by including the wrong cite as *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1285 (11th Cir. 2023) when in fact the decision was issued by District Judge Kathleen M. Williams. Motion to Dismiss at pg. 5.

> As also discussed in section II.B. above, the filing of a Form I-485 application for adjustment of status does not by itself authorize employment, and applicants for adjustment of status therefore need to apply for employment authorization. *See* 8 CFR 274a.12(c)(9). A footnote in PM-0194 (the second Policy Memorandum issued on January 1, 2026) acknowledges this relationship between Forms I-485 and I-765, stating that "when USCIS approves an individual's Form I-485, any associated or underlying applications, such as Form I-765, will be automatically terminated, as the benefit provided by the ancillary form is no longer necessary." PM-0194 at 5 n.17. Defendants admit that Plaintiffs' Form I-765 applications for employment authorization are "ancillary" to their Form I-485 applications. Dkt. 21 at 7. Defendants further admit that final adjudication of both sets of applications by Plaintiffs is on hold pursuant to PM-0192. *Id.*
>
> In their opposition to the motion for preliminary injunction, Defendants attempt to argue that there is no duty to decide adjustment of status applications. *See* Dkt. 21 at 9. Instead, they argue that "adjustment of status is a discretionary decision pursuant to 8 U.S.C. § 1255 that is unreviewable by a court." *Id.* (citing *Patel*, 596 U.S. at 347). The Court has already analyzed and rejected this argument. *See* section III.A. above. As explained, although Defendants have discretion as to whether to grant or deny particular applications for immigration benefits, they do not have discretion to indefinitely and categorically delay or withhold adjudication of such applications. *See Singh*, 470 F. Supp. 2d at 1067 ("there is a difference between the [agency's] discretion over *how* to resolve an application and the [agency's] discretion *whether* it resolves an application" (emphasis in original)).

*See ZAHRA SHOKRI VARNIAB, et al., Plaintiffs, v. JOSEPH B. EDLOW, et al., Defendants.*, No. 25-CV-10602-SVK, 2026 WL 485490, at *11-12 (N.D. Cal. Feb. 20, 2026).

Contrary to Defendants' assertion, Plaintiff has shown that Defendants' delay has been unreasonable and outside their own published processing times. Moreover, the Policy Memorandums apply an *indefinite* hold, which is unlawful and discriminatory. In fact, the President of the United States has unequivocally declared that he would *permanently* pause migration a few days prior to the issuance of the Policy Memorandums.[6]

In light of the page limitation for replies, Plaintiff adopts by reference the arguments advanced by the Plaintiffs in *Fuenmayor et al. v. Edlow, et al.*, Case No. 1:25-cv-25607-JB before this same Court at ECF No. 26 as to why Plaintiff has shown likelihood of success on her remaining claims.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an Order: (i) granting the Motion [ECF No. 7]; (ii) enjoining Defendants from applying a hold to Plaintiff's Immigration

---

[6] On November 28, 2025 President Trump stated: "I will permanently pause migration from Third World Countries." Truth Social, @realDonaldTrump (Nov. 28, 2025, 9:56 AM).

Benefits Applications, and mandating Defendants to adjudicate them within 30 days of this Court's Order; and (iii) granting any further relief that the Court deems just and proper.

Dated: March 3, 2026            Respectfully submitted,

                                    LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
                                    1200 Brickell Avenue, Suite 700
                                    Miami, Florida 33131
                                    E-mail: rodrigo@rdasilvalaw.com
                                    Telephone:   (305) 615-1434
                                    Facsimile:   (305) 615-1435

                                    By: /s/ *Rodrigo S. Da Silva*
                                    Rodrigo S. Da Silva, Esq.
                                    *Counsel for Plaintiff Milka Auristela Ortega Cortez*