UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-20813-CIV-BECERRA

MILKA AURISTELA ORTEGA
CORTEZ,

**Petitioner,**

v.

KRISTI NOEM, Secretary of U.S.
DEPARTMENT OF HOMELAND
SECURITY, et al.,

**Respondents.**

_____/

## DEFENDANT'S MOTION TO DISMISS COMPLAINT AND/OR ALTERNATIVELY STAY PROCEEDINGS AND ADMINSTRATIVELY CLOSE CASE

Defendant, U.S. Citizenship and Immigration Services ("USCIS"), by and through the undersigned Assistant United States Attorney, hereby moves this Court to dismiss the Complaint [D.E. 1] for Declaratory and Injunctive Relief and/or Alternatively Stay Proceedings and Administratively Close Case and states in support thereof as follows:

### BACKGROUND

Plaintiff filed this action under the Mandamus Act and the Administrative Procedure Act ("APA") on February 6, 2026, seeking a writ of mandamus and injunctive relief. [D.E. 1]. Plaintiff alleges unreasonable delay in the adjudication of her Form I-485, Form I-131, and Form I-765 and.. [D.E. 1 at p. 16].

In April of 2022, Plaintiff filed a Form I-485, Application to Register Permanent Resident Status or Adjust Status, requesting adjustment of status under 8 U.S.C. 1159(b) [D.E. 1 at ¶ 5]. On January 9, 2024, Plaintiff filed Form I-131, Application for travel document, and on February 18,

1

2025, she filed a Form I-765, Application for Employment Authorization. *Id.*  Plaintiff is currently scheduled for an interview on her Form I-485 on April 14, 2026.

On December 2, 2025, while Plaintiff's applications remained pending, USCIS issued Policy Memorandum PM-602-0192, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries* ("December 2, 2025 Policy Memorandum"), which, in relevant part, placed a hold on pending benefit requests for aliens from countries listed in Presidential Proclamation 10949, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and other National Security and Public Safety Threats.*

The December 2, 2025 Policy Memorandum applies to this case, as Plaintiff is a citizen and National of Venezuela, one of the 19 countries listed in  Presidential Proclamation 10949. This Policy Memorandum mandates "that all aliens meeting these criteria go through a thorough re-review process, including a potential interview and, if necessary, a re-interview, to fully assess all national security and public safety threats along with any other related grounds of inadmissibility or ineligibility. An individualized, case-by-case review and assessment will be done of all relevant information and facts."

Additionally, on January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries." ("January 1, 2026 Policy Memorandum"), which, in relevant part*,* placed a hold on all pending benefit requests for aliens from countries listed in Presidential Proclamation 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect The Security of the United States.*  The January 1, 2026 Policy Memorandum also applies to this case, as Plaintiff is a citizen and National of Cuba, one of the 39 countries listed in Presidential Proclamation 10998.   This

January 1, 2026 Policy Memorandum did not supersede the guidance in the December 2, 2025 Memorandum, except as specified under the "Exceptions to the Adjudication Hold." Of note, Plaintiff does not fit within these exceptions to the adjudication hold set out in the January 1, 2026 Policy Memorandum.

Most recently, on March 30, 2026, USCIS issued a Web Alert, *Update on USCIS' Strengthened Screening and Vetting*, providing an update on actions taken since the issuance of the December 2, 2025 and January 1, 2026 Policy Memorandums.                                  *See* https://www.uscis.gov/newsroom/alerts/update-on-uscis-strengthened-screening-and-vetting.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Courts must determine whether subject matter jurisdiction exists. *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004). "It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction . . . ." *Kokkonen*, 511 U.S. at 377 (citations omitted). The Eleventh Circuit has further explained that attacks on subject matter jurisdiction under Federal Rule of Civil Procedure12(b)(1) present in two forms: facial or factual. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). Facial attacks require that the court merely look to see whether plaintiff has sufficiently alleged a basis of subject matter jurisdiction while taking the allegations of the complaint to be true. *Id.* at 1230. Factual attacks challenge the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered. *Id.*

When ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court assumes as true all well-pleaded factual allegations and determines

whether they plausibly give rise to an entitlement for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plausibility standard asks for more than the sheer possibility that a defendant has acted unlawfully. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A pleading that offers labels and conclusions, a formulaic recitation of elements to a cause of action, or naked assertions devoid of factual enhancement will not stand. *Id.* at 557.

Lastly, when considering a motion to stay, the Court determines whether to exercise the power to stay proceedings which is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

## ARGUMENT

**I.      Under Rule 12(b)(1), this Court Lacks Jurisdiction Over Any of Plaintiff's Claims.**

**A. Pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), the Court Lacks Jurisdiction Over Any of Plaintiff's Claims Because the Pace of Adjudication of his Form I-485, his Form I-765 and his Form I-131 are Committed to the Agency's Discretion by Congress.**

"Congress has sharply circumscribed judicial review of th[is] discretionary-relief process." *Patel v. Garland*, 596 U.S. 328, 333 (2022). at 332. Under 8 U.S.C. § 1252(a)(2)(B) (notwithstanding circumstances not at issue), "no court shall have jurisdiction to review –

> *any* other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the *discretion* of the Attorney General or the Secretary of Homeland Security[.]

*Id.* (emphasis added). Though 8 U.S.C. § 1252(a)(2)(B)(ii) does not include the term "regarding" like section (B)(i), the use of the term "any other decision or action" encompasses not just "the granting of relief[,]" but also any decision or action "*relating to* the granting of relief." *Patel*, 596 U.S. at 339 (emphasis added); *see also Kucana v. Holder*, 558 U.S. 233, 246–47 (2010) (observing that (B)(i) enumerates administrative judgments that are "insulated from judicial view[,]" whereas

(B)(ii) is a "catchall provision" covering "any other decision[,]" and that the "proximity of clauses (i) and (ii), and the words linking them—'any other decision'"—suggests that Congress had in mind decisions of the "same genre, *i.e.*, those made discretionary by legislation"). Thus, two elements trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar: (1) a decision or action by USCIS, including any decision or action relating to the granting of relief; and, (2) statutorily specified discretion under 8 U.S.C. §§ 1151–1381.

The scope of § 1252(a)(2)(B)(ii)'s jurisdiction-stripping extends beyond final decisions to foreclose district courts' jurisdiction to hear complaints regarding delays in adjudicating discretionary applications. In *Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307 (11th Cir. 2025), the Eleventh Circuit held that § 1252(a)(2)(B)(ii) stripped district courts of jurisdiction over APA challenges to USCIS's alleged delays in adjudicating adjustment-of-status applications. *Id.* at 1309. This was because it held that "§ 1255(a) grants the DHS and USCIS discretion as to the process and resolution of adjustment of status applications." *Id.*

Just like in the statute at 8 U.S.C. § 1255(a), Congress charged USCIS with discretion to adjust the status of applicants under 8 U.S.C. 1159(b), by stating:

> The Secretary of Homeland Security or the Attorney General, *in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe*, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who (1) applies for such adjustment, (2) has been physically present in the United States for at least one year after being granted asylum, (3) continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee, (4) is not firmly resettled in any foreign country, and (5) is admissible…

8 U.S.C. § 1159(b) (emphasis added).

Adjusting status or withholding adjustment under 1255(a), or under, as here, 1159(a) is therefore "within the discretion of USCIS," with no additional textual limitations on USCIS's

discretion, including any deadline by which it must complete adjudication. *See*, *e.g.*, 8 C.F.R. § 103.2(b)(18) (permitting withholding of adjudication); *Zahani v. Neufeld*, 2006 WL 2246211, at *2 (M.D. Fla. June 26, 2006) ("it is clear that 8 C.F.R. § 103.2(b)(18) provides USCIS with discretion to withhold adjudication of the adjustment of status application" such that the Court "is without power to compel" USCIS "to adjudicate. The decisions *to adjudicate* or *to withhold adjudication* are decisions solely within the discretion of the USCIS officers identified in 8 C.F.R. § 103.2(18)") (emphasis in original).

Indeed, courts have broadly agreed that the decision to delay adjudication of an adjustment of status application – or the pace at which adjudication occurs – is discretionary. See *Kanapuram*, 131 F.4th at 1306–07 ("Our sister circuits have held, in nearly identical cases, that § 1252(a)(2)(B)(ii) precludes jurisdiction over challenges to USCIS delays in adjudicating Form I-485 adjustment of status applications. We agree with them." (internal citations omitted)).

Moreover, this same reasoning—and the conclusion that this Court lacks jurisdiction—applies to the pace of adjudication of the pending Form I-131, application for advance parole. This is because, like with adjustment determinations, agency decisions concerning advance parole are discretionary. Specifically, 8 U.S.C. § 1182(d)(5)(A) provides that "[t]he Attorney General may… *in his discretion* parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission . . . ." (emphasis added). This authority may be exercised to provide advance authorization to aliens who wish to travel or return to the United States without a visa. 8 C.F.R. § 212.5(f).   Thus, just as 8 U.S.C. § 1252(a)(2)(B)(ii) strips jurisdiction over the adjustment statute at issue here, 8 U.S.C. § 1159(b), Section (B)(ii) similarly strips jurisdiction over agency decisions stemming from the humanitarian parole statute, 8 U.S.C. § 1182(d)(5)(a).

6

That is because § 1252(a)(2)(B)(ii) applies to discretionary decisions "specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." The phrase "'this subchapter' refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151-1381." *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006). Sections 1159(b) and 1182(d)(5)(a) both fall within that range of statutory provisions. Thus, the decision of whether to grant advance parole, as an extension of the general discretionary parole authority, is  shielded from judicial review as a discretionary decision under § 1252(a)(2)(B)(ii). And, under § 1252(a)(2)(B)(ii), district courts do not have jurisdiction to hear challenges to the pace of USCIS's adjudication of discretionary benefits. *Kanapuram*, 131 F.4th at 1309.

Finally, as to employment authorization, Plaintiff is in fact authorized to work incident to her status.  *See* https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/70-evidence-of-employment-authorization-for-certain-categories/73-refugees-and-asylees; *See also* https://www.uscis.gov/humanitarian/refugees-and asylum/asylum#:~:text=(Some%20asylees%20choose%20to%20obtain,expiration%20date%20on%20your%20EAD.  However, the decision whether to grant Plaintiff's request for an employment authorization document under 8 C.F.R. §  274a.12(c)(9), for those with pending adjustment of status applications under 8 U.S.C. § 1255,[1] is also shielded from judicial review as a discretionary decision under § 1252(a)(2)(B)(ii).

Regarding this request for employment authorization, the agency's regulatory discretion derives from the statutory framework. Congress provided that the Attorney General (now the Secretary) "may" authorize employment for aliens in various categories. *See* 8 U.S.C. §

---

[1] It is unclear why Plaintiff applied under 8 C.F.R. §  274a.12(c)(9), as she does not claim to have a pending adjustment of status application under 8 U.S.C. § 1255.

1324a(h)(3) (defining "unauthorized alien" as one not "authorized to be so employed by this chapter or by the Attorney General"). By using permissive language and delegating implementation to regulation, Congress committed certain employment authorization decisions to agency discretion. Where Congress intended to expressly provide for employment authorization, rather than committing the decision to the Secretary's discretion, it has done so by statute. *See, e.g.*, 8 U.S.C. §§ 1184(c)(2)(E) (stating that the Secretary shall provide L-2 nonimmigrant spouses with employment authorization) and 1184(e)(2) (stating that the Secretary shall provide certain E nonimmigrant spouses with employment authorization).  Employment authorization based on a pending Form I-485 adjustment of status application under 8. U.S.C. § 1255 is not expressly provided in statute but rather is an exercise of the Secretary's discretion consistent with her authority as recognized in 8 U.S.C. § 1324a(h)(3) and as reflected in 8 C.F.R. § 274a.12(c)(9) (providing that aliens with properly filed and pending adjustment applications under 8 U.S.C. 1255 may be granted employment authorization).

The governing regulation, consistent with the Secretary's discretionary authority to provide employment authorization, expressly provides that employment authorization decisions for applications based on an adjustment of status application are discretionary.  Because the authority to grant or deny employment authorization under most categories, including the category Plaintiff applied under, "is specified under this subchapter to be in the discretion of" the Secretary, judicial review is barred. 8 U.S.C. § 1252(a)(2)(B)(ii).

> **B.      The Court Lacks Jurisdiction Over Any of the Plaintiff's Claims Because There is No Discrete, Non-Discretionary Duty to Review the Applications in Any Specific Period of Time.**

Plaintiff fails to demonstrate that Defendants have a mandatory, non–discretionary duty to decide her adjustment of status, advance parole, or employment authorization applications within

any given period of time. Without such a duty, this Court has no jurisdiction over the pace of adjudication under either the Mandamus Act or the APA.

Under 28 U.S.C. § 1361, the Mandamus Act provides courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof *to perform a duty owed to the plaintiff*." (emphasis added). Importantly, that duty is only owed if plaintiffs have a clear right to the relief sought. *See U.S. ex rel. Girard Tr. Co. v. Helvering*, 301 U.S. 540, 543, 57 S. Ct. 855, 857, 81 L. Ed. 1272 (1937) ("Where the right of the petitioner is not clear, and the duty of the officer, performance of which is to be commanded, is not plainly defined and peremptory, mandamus is not an appropriate remedy."); *see, e.g., Anderson v. Bowens*, 881 F.2d 1, 5 (2d Cir. 1989) (requiring "a clear right in the plaintiff to the relief sought"); *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1036 (11th Cir. 2021) ("Mandamus jurisdiction may be exercised only if the plaintiff has a clear right to the relief requested.") (cleaned up). Relief under the Mandamus Act is even less applicable where, as here, Plaintiff alleges that USCIS has failed to perform the discretionary acts of adjudication of her adjustment of status, advance parole, and  employment authorization applications. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("[M]andamus . . . is intended to provide a remedy for a plaintiff only if the defendant owes him a clear *nondiscretionary* duty.") (emphasis added).

Mandamus relief is a drastic and extraordinary remedy, "one of the most potent weapons in the judicial arsenal," *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004), and should be "reserved for really extraordinary causes." *Will v. United States*, 389 U.S. 90, 107, (1967). Plaintiff falls far short of demonstrating such a case here, and have not pointed to any legal authority that establishes a clear right to immediate adjudication of her discretionary applications. Indeed, Plaintiff cannot do so because, as explained above, 8 U.S.C. § 1252(a)(2)(B)(ii) expressly bars

9

judicial review of any matter that the INA specifies is discretionary, and all three of Plaintiff's applications are discretionary. Accordingly, the Court should dismiss the Mandamus Act claim for lack of subject-matter jurisdiction.

The result is the same under the APA. Under the APA, reviewing courts "shall ... compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To state a claim for unreasonable delay, a Plaintiff must allege "that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). The APA's judicial review provisions do not apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see also Hearst Radio v. F.C.C., 167 F.2d 225, 227 (D.C. Cir. 1948)("[The APA] does not provide judicial review for everything done by an administrative agency."). In fact, the APA "preclude[s] judicial review of discretionary agency functions." Hidalgo Canevaro v. Wolf, 540 F. Supp. 3d 1235, 1241 (N.D. Ga. 2021) (citing 5 U.S.C. § 701 (providing that the APA does not apply to "agency action is committed to agency discretion by law.")). Instead, under the APA, a claim alleging that an agency has unlawfully withheld or unreasonably delayed agency action "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton, 542 U.S. at 64. In other words, the APA "empowers a court only to compel an agency to perform a ministerial or non-discretionary act." Id. (internal punctuation and citation omitted).

In this case, the Court lacks jurisdiction to hear Plaintiff's APA claim because the action Plaintiff seeks to compel—adjudication of three discretionary applications —is a matter left to governmental discretion.

II.     **Plaintiff Fails to State a Claim as There is No Statute or Regulation Requiring that His Application be Adjudicated within a Specific Time Frame.**

The APA authorizes suit by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" is defined as, among other things, "failure to act." 5 U.S.C. § 551(13). The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In order to proceed on a claim under 5 U.S.C. § 706(1), a plaintiff must assert "that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). And there must also be a "showing of prejudice before agency action can be set aside for its lack of punctuality." *King v. Nat'l Transp. Safety Bd.*, 766 F.2d 200, 202 (5th Cir. 1985).

Even if the Court finds that subject matter jurisdiction exists, the Complaint should still be dismissed because Plaintiff cannot establish that USCIS has failed to adjudicate her applications within a required time frame under statute or regulation. Moreover, the plain language of relevant federal statutes, in the absence of congressionally mandated timelines, and the national security considerations implicated by the adjudication process all support that the pace of adjudication is discretionary. *See Beshire v. Holder*, 10 F. Supp.3d 165, 173 (D.D.C. 2014).

Assuming arguendo Plaintiff had been able to show an unreasonable delay, Plaintiff still has not alleged sufficient prejudice to state a claim under 5 U.S.C. § 706. The Complaint alleges that Plaintiff has been significantly harmed by the hold of adjudication as to their Immigration Benefit Applications. *See* [D.E. 1, ¶ 68]. Plaintiff alleges without employment authorization documents or a green card, her life would be disrupted, and she would face significant obstacles in planning for the future. *Id.* at ¶ 69. Plaintiff also states without a green card or advance parole,

11

they are unable to engage in temporary travel outside of the United States. *Id.* Indeed, "uncertainty and the ability to move forward with the normal course of life are inherent risks of engaging in the immigration process." *Osechas Lopez*, No. 2023 WL 152640, at * 3.

III. **Alternatively, a Stay of these Proceedings is Appropriate due to the National Security Concerns Implicated by Virtue of the December 2, 2025 Policy Memorandum and the January 1, 2026 Policy Memorandum.**

District courts are vested with broad discretion to stay proceedings, which authority is incidental to their inherent powers to control their dockets. *See Clinton* v. Jones, 520 U.S. 681, 706 (1997). Several factors when evaluating a request for stay may be considered, including prejudice to the non-moving party; whether the stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court. *O'Boyle v Town of Gulf Stream*, No. 19-cv-80196-BLOOM/Reinhart, 2020 WL 3067660, at *2 (S.D. Fla. Mar. 30, 2020) (citation omitted). Here, each factor favors a stay. Plaintiff will not be prejudiced as there is no relief that can otherwise be granted by USCIS while the hold is in place; the litigation is simplified by allowing the parties to address the actual merits of the case at a later date; and in turn this reduces the burden of litigating issues that cannot effectively dispose of the case.

The Court should exercise its discretion to enter a stay of proceedings considering the national security concerns which prompted the Executive Branch's hold on adjudications of applications like that of Plaintiff's. The authority over the immigration system in combination with national security are committed to the political branches, not the judiciary. *See Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976); *Dep't of State v. Munoz*, 602 U.S. 899, 911 (2024)(noting that immigration is "an area unsuited to rigorous judicial oversight"); *Orlov v. Howard*, 523 F. Supp. 2d 30, 36 (D.D.C. 2007)("the general rule [is] that courts should refrain from interfering with matters of immigration and national security").

Therefore, to compel USCIS to adjudicate applications in contravention of an executive judgment would interfere with such efforts to maintain public safety. *See e.g. Ameziane v. Obama,* 699 F.3d 488, 494 (D.C. Cir. 2012)("[i]t is not within the role of the courts to second-guess executive judgments made in furtherance of acquiring and exercising expertise of protecting national security by the executive"). As such, Defendant would request a stay of these proceedings until the hold is lifted, as there is no relief available to Plaintiff at this time. During the interim, the case should be administratively closed so as to not affect the substantive rights of the parties.

## CONCLUSION

Based upon the foregoing, Defendant respectfully requests the dismissal of Plaintiff's Complaint [D.E. 1] or in the alternative that the Court stay the proceedings and administratively close the case during the pendency of the hold.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**United States Attorney**

By: **/s/ Kelsi R. Romero**
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
Special Bar No. A5502758
500 East Broward Blvd.
Suite 700
Fort Lauderdale, Florida 33394
Tel.: (954) 660-5694
E-mail: Kelsi.Romero@usdoj.gov
*Counsel for United States*

13